UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Toumazou,                              )
et al.,                                )
                                       )
                                       )
Plaintiffs,                            )   Civil Action No. 09-1967
                                       )   Judge Paul L. Freidman
v.                                     )
                                       )
                                       )
                                       )
Turkish Republic of Northern Cyprus    )
et al.                                 )
                                       )
Defendants.                            )
                                       )
                                       )
_____)

### DEFENDANT TURKISH REPUBLIC OF NORTHERN CYRPUS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE AND TO DISMISS THE CLAIMS OF MICHALI TOUMAZOU PURSUANT TO LOCAL RULE 5.1(E)

Steven R. Perles (No. 326975)          David S. Saltzman (No. 436201)
Edward MacAllister (No. 494558)        SALTZMAN & EVINCH, PC
PERLES LAW FIRM, PC                    655 15th Street, N.W.
1146 19th Street, NW                   Suite 225-F
5th Floor                              Washington, DC 20005
Washington, DC 20036                   Telephone: (202) 637-9877
Telephone: (202) 955-9055              Telefax: (202) 637-9876
Telefax: (202) 955-3806

Attorneys for Defendant
Turkish Republic of Northern Cyprus

## INTRODUCTION

The Turkish Republic of Northern Cyprus ("TRNC") is a foreign government with its capital in Lefkoşa, Cyprus.[1]  The TRNC hereby files this Motion to Dismiss Plaintiffs' Second Amended Complaint ("Amended Complaint") on the basis of the Court's lack of personal jurisdiction over the TRNC pursuant to Federal Rule of Civil Procedure 12(b)(2) and improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and to dismiss the claims of Michali Toumazou pursuant to Local Rule 5.1(e).[2]  The TRNC observes that Plaintiffs' Amended Complaint is filed upon strikingly similar grounds as the complaint filed against the Republic of Turkey ("Turkey") that now-Chief Judge Royce C. Lamberth dismissed, first for expiration of statute of limitations and then for lack of subject matter jurisdiction, after remand from the United States Court of Appeals for the District Court Circuit with instructions to first consider the applicable subject matter jurisdiction requirements. *Crist, v. Republic of Turkey*, 995 F. Supp. 5, 7-8 (D.D.C. 1998).  Therefore, should the Court assert personal jurisdiction over the TRNC,

---

[1] Lefkoşa is the Turkish Cypriot half of the divided city of Nicosia.  The dividing line bisecting the city represents roughly the cease-fire line from hostilities between Greek and Turkish Cypriots in late 1963 and early 1964.  The United Nations Peacekeeping Force in Cyprus ("UNFICYP"), established in March 1964, maintains the line, sometimes known as the "Green Line."  *See "The Buffer Zone,"* UNFICYP website available at http://www.unficyp.org/nqcontent.cfm?a_id=1592&tt=graphic&lang=ll, last visited on January 26, 2010.

[2] Plaintiffs served their complaint upon a driver for the TRNC Representative, who was not authorized to accept service, in violation of the federal service rule applied to unincorporated associations.  *See* Fed. R. Civ. P. 4(h)(1)(b); *Klieman v. Palestinian Auth.,* 467 F. Supp. 2d 107, 114 (D.D.C. 2006) (finding that "plaintiffs have filed no affidavits, declarations or other evidence to establish that [the recipient] was an authorized agent for service of process or that he represented that he was, and plaintiffs [defendants] flatly deny that he was authorized or did so represent.").  The TRNC however seeks the swift administration of justice and to avoid any waste of the Court's resources, and so hereby waives this particular defect to service of process.

1

we hereby expressly reserve the right to file further motions to dismiss the Amended Complaint, based on other defenses including, but not limited to, lack of subject matter jurisdiction and failure to state a claim,

According to Plaintiffs, the TRNC in conspiracy with former co-Defendant Turkey and new Defendants HSBC Bank and assorted subsidiaries ("HSBC"), committed a litany of offenses, the gravamen of which is the dispossession of real property during Turkey's 1974 military intervention on Cyprus and its subsequent resale or use.  It is beyond dispute:

- that all of the real property at the root of the causes of action pled in the Amended Complaint is located on Cyprus, an island in the eastern Mediterranean Sea approximately 5,600 miles from the District of Columbia;

- that none of the Plaintiffs reside in the District of Columbia and only one Plaintiff perhaps resides in the United States, as a resident alien in North Carolina[3], and;

- no injury suffered in the District of Columbia has been alleged,

Finally, as demonstrated below and in the attached sworn affidavits of Mr. Hilmi Akil, Washington Representative of the Turkish Republic of Northern Cyprus, (Rep. Akil Affidavit, Exhibit 1), and Mr. Izzet Zorlu, (Zorlu Affidavit, Exhibit 2), Plaintiffs' conclusory allegations relating to the few inconsequential contacts with the District of Columbia are easily disproved and should be excluded as a matter of law.

For these and other reasons as set forth below, Plaintiffs cannot establish the prima facie showing required for the Court to assert personal jurisdiction over the TRNC,

---

[3] Plaintiffs' failure to provide a proper address for Michali Toumazou in violation of Local Rule 5.1(e) is addressed by the TRNC in Section III below

whether pursuant to the D.C. long-arm statute, D.C. Code § 13-423, or upon any other basis. Plaintiffs' Amended Complaint should therefore be dismissed.

## PROCEDURAL BACKGROUND

Plaintiffs filed their original Complaint on October 19, 2009. The original Complaint and summons were served upon an individual then sitting in the TRNC's Representative Office in Washington, DC on October 22, 2009. The Court granted an extension of time to the TRNC to file a response on December 17, 2009, which created a February 16, 2010 deadline for the TRNC to answer or otherwise respond.

On February 16, 2010, Plaintiffs suddenly filed an amended Complaint, (Docket Entry #5), styled as an "Errata," "to correct the incorrect filing of original Class Action Complaint filed on October 19, 2009 that consisted of numerous spelling errors." But a review of this document revealed that it contains at least 34 new allegation paragraphs, three new exhibits and two new counts in addition to those present in the original Complaint, thus belying its title. (Docket Entry #5-1). Plaintiffs also voluntarily dismissed the Republic of Turkey ("Turkey"). (Docket Entry #6). Service was never affected upon Turkey. Nonetheless, the first amended Complaint, filed the same day and a few minutes before the voluntary dismissal, continued to name Turkey as a defendant in its caption and in its allegations.

The TRNC filed a motion consented to by Plaintiffs for additional time to respond to the first amended Complaint, which the Court granted, thereby extending the time to answer until March 8, 2010. On that final day, March 8, counsel for Plaintiffs requested the TRNC's consent to file a second amended Complaint and for leave to file it on March

18, 2010. The TRNC consented to this request. The Court agreed to this proposed schedule.

On the afternoon of March 18, counsel for Plaintiffs subsequently requested the TRNC's consent for a single, additional day to file their second amended Complaint, to which counsel for the TRNC could not agree, owing to the lateness of the request and the time difference between Washington, DC and Cyprus, which made it difficult for the TRNC to confer with its counsel. But, the TRNC indicated it would not oppose the request. The Court agreed to this request from Plaintiffs. Plaintiffs finally filed their Second Amended Complaint on March 19, 2010, which, though it impleaded new defendants and made numerous significant changes to the allegations, was again styled as an "Errata."

## COUNTERSTATEMENT OF FACTS

In the context of a ruling on the sufficiency of personal jurisdiction allegations, the Court in not obligated to take Plaintiffs' allegations as true. *Shirlington Limousine v. San Diego Union-Tribune*, 566 F. Supp. 2d 1, 3 (D.D.C. 2008) *citing United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) ("except[ing] personal jurisdiction analysis from the general rule that all allegations must be taken as true for purposes of ruling on a motion to dismiss."). The overheated language employed in the Amended Complaint does not assist the Court in its efforts to clarify the issues for resolution. For the Court's consideration the TRNC, therefore, provides a Counterstatement of Facts with a short history of recent events that have occurred on Cyprus, attached as a separate document.

4

## JURISDICTIONAL FACTS ALLEGED BY PLAINTIFFS

The few allegations that Plaintiffs plead in their Amended Complaint to establish personal jurisdiction over the TRNC are repetitive and conclusory. Plaintiffs allege that the Court has personal jurisdiction over the TRNC because:

1. the "TRNC, illegally governs, sells, finances, rents, leases, advertises, taxes, profits and markets the properties, businesses and lands belonging to the Plaintiffs['] [*sic*] and the Class to others, including third parties, under a fraudulent property scheme involving HSBC, real estate brokers and other companies located in the U.S [*sic*] and elsewhere." (Compl.[4] at p. 2-3);

2. the TRNC is "actively engaged in the marketing, advertising, financing, development leasing, use or selling of properties belonging Plaintiffs and the Class", (Compl. at ¶¶ 2, 35, 45); ;

3. the TRNC "maintain[s] offices and transact[s] business in the District of Columbia." (Compl. at ¶¶ 2, 3, 109);

4. the "TRNC falsely portrays and represents that it has an 'embassy' located in Washington DC to deceive the public and the world and to wrongfully solicit and obtain funds in the advertisement, marketing financing, sale and transfer of properties belonging to the Plaintiffs and the Class." (Compl. at ¶¶ 49, 60, 109);

5. the "fraudulent scheme of the TRNC is assisted supported or directed through HSBC and/or occurs in whole or in part in the U.S." (Compl. at ¶ 35).

6. the "TRNC illegally posts on its Washington DC website false statements including but not limited to the sale of property in the north of Cyprus and also

---

[4] The Motion to Dismiss is filed in response to Plaintiffs' Second Amended Complaint and all citations in this Memorandum, e.g. (Compl. at ¶48), refer to a page or paragraph of the Second Amended Complaint only.

that it protects and respects the rights of all owners of the property located in the north," (Compl. at ¶¶ 51, 59);

7. "The TRNC facilitates the illegal encumbrances, rental, lease use or sale of property that belongs to the Plaintiffs and the Class through a systemized process that it advertises physically in Washington DC or on the internet and recommend in counsel in their representative office in Washington, D.C. . . ." (Compl. at ¶ 56);

8. The TRNC conspired to commit wrongful acts "through mail, wire transactions and/or banking transactions . . . .in the District of Columbia." (Compl. at ¶ 92); and

9. The TRNC, with "weapons equipment and arms obtained from the U.S." interferes with rights in property belonging to Plaintiffs and the Class. (Compl. at ¶¶ 7, 36).

These repetitive allegations can be condensed into three grounds by which Plaintiffs' assert that this Court has personal jurisdiction over the TRNC: (1) the TRNC engages in the marketing, advertising or otherwise facilitating of the sale of property in Northern Cyprus, and conspires with HSBC in a money laundering scheme related to that property in a manner that somehow touches the District of Columbia; (2) the TRNC maintains an office in the District of Columbia, and that office has a website pertinent to the sale of property in northern Cyprus; and (3) the TRNC utilizes arms obtained from the U.S. to interfere with Plaintiffs' property rights.[5]

---

[5] Plaintiffs' failure to attach exhibits to their Second Amended Complaint, despite their continued reference to the exhibits that were attached to the First Amended Complaint, (*see* Compl. at ¶48), compels the TRNC to respond these exhibits, although they are not

6

As demonstrated below, these allegations are insufficiently specific, demonstrably false, or logically impossible and therefore cannot support the Court's exercise of personal jurisdiction.

## SUMMARY OF ARGUMENT

An assertion of personal jurisdiction requires the establishment of a prima facie case of jurisdiction supported by "concrete evidence" or more than the series of conclusory and demonstrably false allegations offered by Plaintiffs. The TRNC is permitted to submit counter-evidence to disprove allegations of personal jurisdiction under the Federal Rules of Civil Procedure. The evidence submitted by the TRNC reveals a complete lack of a jurisdictional nexus between the District of Columbia and either the Plaintiffs or their causes of action. There is no tie between Plaintiffs' claims for the alleged dispossession of property on the island of Cyprus and this forum other than the TRNC Washington, DC Representative Office's alleged operation of a website that facilitates the sale of property in North Cyprus – a website that the TRNC demonstrates it has had no connection with since 2005. Plaintiffs' other jurisdictional

---

currently in the record. An examination of the exhibits reveals a troubling investigative sloppiness, which is also on display elsewhere in Plaintiffs' amended complaints. Nevertheless, none of the supposed exhibits establishes reliable evidence in favor of Plaintiffs' assertion of personal jurisdiction, including the page views of websites owned and operated by private individuals not affiliated with the TRNC government in any way. (Rep. Akil Affidavit, Exhibit 1 at ¶¶ 28-34 for discussion of websites). For example, Plaintiffs rely upon an out-of-date and superseded government bulletin to support their allegations regarding TRNC money laundering and terrorist financing. (Compl. at ¶ 48). On July 23, 2009, the U.S. Department of the Treasury fully exonerated the TRNC in its investigation of alleged money laundering and issued an advisory that explicitly overruled the one to which Plaintiffs refer. *Withdrawal of Advisory FIN-2008-A003*, U.S. Department of the Treasury Financial Crimes Enforcement Network, Advisory FIN-2009-A005 (July 23, 2009). And, none of the related exhibits provided by the Plaintiffs supply any information about activities by the TRNC. Instead they involve a private bank called First Merchant Bank, which is not a party to this lawsuit.

7

allegations are much less significant and are also easily rebutted. Indeed, though a vast and complex scheme of dispossessing, selling, fraudulently advertising, and financing potentially 170,000 properties is alleged, the Amended Complaint fails to provide the details of even a single property transaction. Instead, vague and unspecific allegations are scattered through the Amended Complaint. For example, the alleged money laundering scheme operated by HSBC "occurs in whole or in part in the U.S." or it is done "through London and/or Washington DC" and the TRNC deprives Plaintiffs of the enjoyment of their property through "U.S. obtained weapons."

Moreover, the purpose and activities of the TRNC's Representative Office in the District of Columbia are completely unrelated to the gravamen of the Amended Complaint. And because the TRNC's office and personnel here exist to interact with the U.S. government, such contacts with the forum must be excluded from the Court's personal jurisdiction analysis. Unburdened of its political freight, Plaintiffs' Amended Complaint fails to allege the prima facie case necessary to allow the Court to exercise personal jurisdiction over the TRNC and should, thus, be dismissed.

Finally, the Amended Complaint's heated rhetoric exposes that it is above all a political document that attempts to drag this Court into a controversy that has been enduring for approximately four decades and which concerns real property that has at all times relevant to this matter been located thousands of miles away on Cyprus. The Plaintiffs also ignore the existing political and legal frameworks dedicated to resolving all matters in dispute on Cyprus overseen through the tireless efforts of the elected leaders of the two communities on the island, under the supervision of the United Nations and the European Union, and with the support of the United States government. An exercise of

8

personal jurisdiction would also violate the due process clause of the U.S. Constitution by

dragging into this Court the TRNC, an overseas party that had no reason to foresee being

haled into this Court over this dispute.

Additionally, the fatal deficiency in Plaintiffs' personal jurisdiction case is also

fatal for Plaintiffs' case for venue. The TRNC refutes Plaintiffs' allegations regarding

the transaction of business in the District and proves that its Representative Office exists

to interact with the U.S. Government. Venue therefore is not proper in the District of

Columbia.

## ARGUMENT

## I.     THE AMENDED COMPLAINT DOES NOT ALLEGE SUFFICIENT SPECIFIC FACTS TO ALLOW THE COURT TO ASSERT PERSONAL JURISDICTION OVER THE TRNC

### A.     FEDERAL RULE 8(a) REQUIRES PLAINTIFFS TO PERFECT A PRIMA FACIE CASE OF PERSONAL JURISDICTION WHILE PRECLUDING THE COURT FROM ACCEPTING CONCLUSORY OR DEMONSTRABLY FALSE ALLEGATIONS AS TRUE

Plaintiffs' Amended Complaint is undermined first by its failure to fulfill the

requirement to establish a prima facie case of personal jurisdiction. Federal Rule 8

requires "a short and plain statement of the grounds for the court's jurisdiction." Fed. R.

Civ. P. 8(a)(1). To meet this burden, specific factual allegations are required to overcome

a motion to dismiss for lack of personal jurisdiction. A "plaintiff has the burden of

establishing a factual basis for the exercise of personal jurisdiction over the defendant.

'The general rule is that a plaintiff must make a *prima facie* showing of the pertinent

jurisdictional facts.'" *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 226 (D.D.C.

2005) *quoting First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir.

9

1988); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

Conclusory statements "do not constitute the *prima facie* showing necessary to carry the

burden of establishing personal jurisdiction." *First Chi. Int'l*, 836 F.2d at 1378 *quoting*

*Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir. 1983). The Plaintiffs'

burden of a prima facie case cannot be met unless they allege "*specific facts that*

*demonstrate purposeful activity by the defendant in the District of Columbia invoking the*

*benefits and protections of its laws.*" *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221,

226 (D.D.C. 2005) (emphasis added) (citation omitted); *Atlantigas Corp.*, 290 F. Supp.

2d at 42. Such allegations as the TRNC transacts "business in the District of Columbia

related to the Plaintiffs' claims" are wholly conclusory and insufficient under that

standard. In this case, Plaintiffs have failed both to supply the requisite specific factual

allegations required to meet their Federal Rule 8 obligations, and, as demonstrated below

and in the attached exhibits, rely on demonstrably false allegations regarding the TRNC's

involvement in the sale of properties and purchase of military equipment. Thus,

Plaintiffs cannot establish the prima facie case required to allow the Court to assert

personal jurisdiction over the TRNC.

      **B.**     **SPECIFIC PERSONAL JURISDICTION CAN NOT BE ASSERTED**
              **BECAUSE PLAINTIFFS FAIL TO ALLEGE SUFFICIENT FACTS**
              **LINKING THEIR CAUSES OF ACTION TO THE DISTRICT OF**
              **COLUMBIA**

       To allow the Court to assert personal jurisdiction over the TRNC, Plaintiffs'

Amended Complaint must allege a factual foundation for either specific personal

jurisdiction or general personal jurisdiction. "Specific jurisdiction 'arises out of' or

'relates to' the cause of action even if those contacts are 'isolated and sporadic.' . . .

General jurisdiction arises when a defendant maintains 'continuous and systematic'

contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) *quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). A court may assert specific personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 462, (D.C. Cir. 1988) *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's contacts with the forum state must be such that it "should reasonably anticipate being haled into court" there. *Health Communications*, 860 F.2d at, 462, *quoting World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

In the present case, Plaintiffs present only two sets of allegations relevant to a specific personal jurisdiction analysis. First, they allege that the TRNC, either alone or in conspiracy with HSBC, engages in marketing, advertising or otherwise facilitating the sale of properties in northern Cyprus through the TRNC's Representative Office in Washington, DC and its website. (Compl. at ¶¶ 2, 3, 49, 51, 56, 59, 60, 109). This set of allegations is inadequate as a ground upon which the Court may rest an assertion of personal jurisdiction for two reasons: firstly the allegations rely upon a great deal of conclusory statements. And conclusory statements "do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *First Chi. Int'l*, 836 F.2d at 1378 *quoting Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 787 (D.C. Cir. 1983). Secondly, these allegations are also flatly untrue. (Rep. Akil Affidavit,

11

Exhibit 1, at ¶23-27).  The burden to allege specific facts "excepts personal jurisdiction analysis from the *general rule that all allegations must be taken as true for purposes of ruling on a motion to dismiss*."  *Shirlington Limousine v. San Diego Union-Tribune*, 566 F. Supp. 2d 1, 3 (D.D.C. 2008) *citing United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000) (emphasis added).  To counter the blatantly inaccurate allegations in Plaintiffs' Amended Complaint that are critical to the Plaintiffs' case for personal jurisdiction, the TRNC submits a sworn affidavit as Exhibit 1.  "In fact, courts in the District of Columbia "may consider outside evidence to make factual determinations in disposing of a motion to dismiss for lack of personal jurisdiction."  *Id.*

  The affidavits prove that the TRNC Representative Office is completely unrelated to Plaintiffs' causes of action and its mere existence cannot alone serve as a basis for asserting specific personal jurisdiction.  D.C. Code § 13-423(b) "bars . . . claims unrelated to the acts forming the basis for personal jurisdiction."  *Dickson v. United States*, 831 F. Supp. 893, 897 n.5 (D.D.C. 1993) *quoting Pollack v. Meese*, 737 F. Supp. 663, 666 (D.D.C. 1990).  And, the alleged website does not exist. (Rep. Akil Affidavit, Exhibit 1 at ¶28-32).  The presence of this TRNC office, then, is only relevant should Plaintiffs attempt to argue that the Court should assert general personal jurisdiction over TRNC.  As TRNC demonstrates below, (*infra* at Section I.C.), however, the activities of its office in the District of Columbia constitute interactions with the U.S. government, and these government contacts cannot form the basis of the Court's assertion of personal jurisdiction under the government contacts exception.

  Plaintiffs also allege that the TRNC in some manner utilizes military equipment "obtained from the U.S.," presumably via the U.S. government located in the District of

Columbia, to interfere with their rights in property, (Compl. at ¶ 7, 36), an assertion that

is undermined by the sworn statement attached by the TRNC, and by law, which prevents

the TRNC from purchasing arms in the U.S.  Plaintiffs also attempt inappropriately to

aggregate their allegations regarding co-defendants HSBC's provision of banking

services in the District of Columbia to build a case for the TRNC's contacts with the

forum.

Finally, should the Court find contacts between the TRNC and this forum such

that the Court could otherwise assert personal jurisdiction over the TRNC, it would

nonetheless be a violation of constitutional due process clause to hale the TRNC into this

distant forum on the basis of those few contacts, as is further discussed below. (*Infra* at

Section I.D.).

> i. **PLAINTIFFS' ALLEGATIONS REGARDING THE SALE AND
>    MARKETING OF PROPERTIES DO NOT CONTAIN THE
>    SPECIFIC FACTUAL ALLEGATIONS REQUIRED BY FEDERAL
>    RULE 8(a) AND THE DISTRICT OF COLUMBIA LONG ARM
>    STATUTE AND ARE DEMONSTRABLY FALSE**

Plaintiffs' allegations that the TRNC markets and sells properties in Cyprus are

insufficiently specific, inaccurate and are easily disproved, as are Plaintiffs' allegations

that the TRNC obtained arms from the U.S., presumably from the U.S. government in the

District Columbia, used to interfere with Plaintiffs' property rights.  The Amended

Complaint fails to allege a statutory basis that supports the Court's right to assert personal

jurisdiction.  Nonetheless, as Plaintiffs invoke diversity jurisdiction; "the court's personal

jurisdiction over nonresident defendants depends upon state law, here the law of the

District of Columbia, the application of which is subject to the constraints of

constitutional due process." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509

(D.C. Cir. 2002). In order to establish personal jurisdiction the Court must first examine

whether jurisdiction is appropriate under the long-arm statute and whether "a finding of

jurisdiction satisfies the constitutional requirements of due process." *GTE New Media*

*Serv. Corp. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). The Plaintiffs

"must allege some specific facts evidencing purposeful activity by [d]efendants in the

District of Columbia by which they invoked the benefits and protections of its laws."

*E.g., Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). The Plaintiffs'

burden cannot be discharged with "[m]ere conclusory statements" which "will not

suffice." *Shirlington Limousine v. San Diego Union-Tribune*, 566 F. Supp. 2d 1, 3

(D.D.C. 2008) *quoting Jones v. City of Buffalo*, 901 F. Supp. 19, 21 (D.D.C. 1994).

Outside evidence may be considered in the personal jurisdiction analysis. *Id.* As a result,

the Court may weigh the personal jurisdiction allegations made by Plaintiffs as well as

any evidence produced by the TRNC, such as Representative Akil's and Mr. Zorlu's

sworn affidavits.

The question of which specific facts must be alleged is answered by the

requirements of the District of Columbia Long Arm Statute. A District of Columbia

court may exercise personal jurisdiction over a person, who acts directly or by an agent,

as to a claim for relief arising from the person's transacting any business in the District of

Columbia. D.C. Code § 13-423(a)(1); *United States v. Ferrara*, 54 F.3d 825, 828 (D.C.

Cir. 1995).[6] Plaintiffs however must also "allege some specific facts evidencing

---

[6] The D.C. Long Arm statute does not contain another subsection that would support the
Court's assertion of jurisdiction over the TRNC based upon Plaintiffs' allegations. The
action neither arises from contracting to supply services in the District of Columbia, §
423(a)(2), nor from causing tortious injury in the District of Columbia, § 423(a)(3), (4),
nor relates to real property in the District of Columbia, § 423(a)(5), nor regards a surety,

purposeful activity by [d]efendants in the District of Columbia by which they invoked the benefits and protections of its laws." *E.g.*, *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 205 (D.D.C. 1994). Plaintiffs' allegations regarding the marketing and sale of properties in Cyprus must, therefore, contain specific allegations of fact that tie that alleged activity to the forum. *See* D.C. Code § 423(b) (stating "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

Plaintiffs' allegation regarding the marketing and sales of property—that the TRNC "actively engaged in the marketing, advertising, financing, development leasing, use or selling of properties belonging Plaintiffs and the Class", (Compl. at ¶¶ 2, 35, 45)— does not explain where such activities occur or where any specific transactions occur or to whom the properties are sold.[7] These alleged activities could be occurring in Cyprus, Turkey, continental Europe or anywhere else in the world. Plaintiffs' recently added allegations that the dispossessed property sales scheme involved "HSBC, real estate brokers and other companies located in the U.S and elsewhere." (Compl. at p.2, ¶¶ 48, 50). But allegations that merely allege that the TRNC was somehow involved with property sales in the United States or that allege money laundering, (Compl. at ¶ 48), are insufficiently specific to create personal jurisdiction over the TRNC in the District of

---

§ 423(a)(6), nor a marital or parent and child relationship, § 423(a)(7). Further, Plaintiffs cannot allege jurisdiction under D.C. Code § 13-422, which applies to "person[s] domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia." The TRNC is a foreign government, with its capital in Lefkoşa, Cyprus. (Rep. Akil Affidavit, Exhibit 1 at ¶¶ 3-4).

[7] The TRNC notes that a related exhibit referred to in the Amended Complaint at ¶ 48 as "Exhibit A" was not included with the Amended Complaint.

15

Columbia under the D.C. Long Arm Statute, which requires that a cause must "arise from the acts" that occurred in the District of Columbia. D.C. Code § 13-423(b).

Plaintiffs also describe loans received by the TRNC for "financing and development based on the equity of the properties belonging to Plaintiffs" that are "directed, finalized, processed by and through HSBC and occur in whole or part in Washington, D.C. or London". (Compl. at ¶ 9). Plaintiffs also offer a vague and conclusory allegation that the TRNC conspired to commit wrongful acts "through mail, wire transactions and/or banking transactions . . . .in the District of Columbia." (Compl. at ¶ 92). These allegations however only identify HSBC activities in Washington, DC; and the TRNC can not be haled into court based upon the unilateral activities of a third party that emanate from the forum.

> Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.

*Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 417 (1984) (footnote indicators omitted).

Plaintiffs allege only one fact among the marketing and facilitation of property sale allegations that attempts to tie their causes of action to the forum: that the "TRNC facilitates the illegal encumbrances, rental, lease use or sale of property that belongs to the Plaintiffs and the Class through a systemized process that it advertises physically in Washington DC or on the internet and recommend in counsel in their representative office in Washington, D.C. . . " (Compl. at ¶ 56). Plaintiffs however again fail to spell out the "systemized process," which is irrelevant anyway unless it occurred in the District

16

of Columbia. Representative Akil's Affidavit makes clear that the TRNC Representative

Office in Washington, DC does not facilitate any commercial transactions.

Also, an allegation that advertising is done online in the forum does not create

personal jurisdiction over the TRNC in this forum without some specific factual

allegations regarding the content of the website and the scale of interactivity between

forum residents and the TRNC. *See, e.g., Blumenthal v. Drudge*, 992 F. Supp. 44

(D.D.C. 1998) (holding that "the exercise of personal jurisdiction is contingent upon the

web site involving more than just the maintenance of a home page"); *Mallinckrodt v.*

*Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265 (D.D.C. 1998) (examining D.C. Code §

13-423(a)(1) and finding that an non-interactive electronic bulletin did not "constitute

transacting business within the District of Columbia for purposes of [subsection (a)(1)] of

the long-arm statute."); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549-50 (7th Cir.

2004) ("The exercise of personal jurisdiction based on the maintenance of a passive

website is impermissible because the defendant is not directing its business activities

toward consumers in the forum state in particular."). Regardless, the TRNC

Representative Office *does not* presently own, control or subsidize any such website.

(Rep. Akil Affidavit, Exhibit 1 at ¶ 28-32; Zorlu Affidavit Exhibit 2). Plaintiffs have

identified one website that they argue is connected to the TRNC in some way. (Compl. at

¶ 59). The facts demonstrate however that this website is not owned by the TRNC or its

Washington, DC office; the TRNC abandoned the website's domain name and ceased

any relationship to it long ago. (Rep. Akil Affidavit, Exhibit 1 at 28-34).[8]

---

[8] Plaintiffs First Amended Complaint attached several pages from another website,
www.trncproperty.eu. But this website has never been owned, operated, authorized by,

This leaves only the reference to that part of the "systemized process" by which the sale of property is recommended "in counsel in [the TRNC's] representative office." This, too, is an indeterminably vague statement which is not a specific fact "evidencing purposeful activity by [d]efendants in the District of Columbia by which they invoked the benefits and protections of its laws." *Novak-Canzeri v. Saud*, 864 F. Supp. at 205. Nor is this "fact", which the TRNC disputes as discussed below, even an activity upon which Plaintiffs can base a cause of action. In order for Plaintiffs to utilize the subsection of the long-arm statute that authorizes jurisdiction over a person who transacts business in the District of Columbia, they must "prove that . . . *the claim arose from the business transacted in the District*.'" *Mallinckrodt Medical, Inc. v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265, 271-72 (D.D.C. 1998) *quoting Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 48 (D.D.C. 1994) (emphasis added). The D.C. Code § 13-423(b) acts as a limit on § 13-423(a) and "bars . . . claims unrelated to the acts forming the basis for personal jurisdiction." *Dickson v. United States*, 831 F. Supp. 893, 897 n.5 (D.D.C. 1993). This limitation is "meant to prevent 'the assertion of claims in the forum state that do not bear some relationship to the acts in the forum state relied upon to confer jurisdiction.'" *Cohane*, 385 A.2d at 158, *quoting Malinow v. Eberly*, 322 F. Supp. 594, 599 (D. Md. 1971). Plaintiffs' allegations regarding the marketing and sale of properties in Cyprus are completely without reference to the District of Columbia, except for the single, vague reference to a process by which a recommendation is given in the representative office. (Compl. at ¶ 56). Plaintiffs do not and cannot, (Rep. Akil Affidavit, Exhibit 1 at ¶ 23-27), explain who gives such recommendation or to which

---

or in any way affiliated with the TRNC government or its Washington, DC office. (Rep. Akil Aff., Exhibit 1 at ¶ 35).

properties it applies, or to any other content of the supposed recommendation; the allegation is indecipherable and incapable of supporting a cause of action against the TRNC. Plaintiffs' allegations do not meet the requirement to identify specific facts related to their causes of action, and therefore are unable to form the required prima facie case of personal jurisdiction.

Moreover, the allegation regarding the TRNC making property recommendations in its District of Columbia office is false because the TRNC representative office provides no such counseling, other than to urge those who inquire of real property purchases in the TRNC to retain their own counsel, without making attorney referrals. (Rep. Akil Affidavit, Exhibit 1 at ¶ 27). Thus, the TRNC Representative Office makes remarkably similar representations to those made by the United States government on the same issue. *See, e.g., 2009 Investment Climate Statement – Cyprus*, U.S. Department of State website, available at: http://www.state.gov/e/eeb/rls/othr/ics/2009/117430.htm (stating "Property remains one of the key outstanding issues that constitute the Cyprus problem. … Potential investors should be cautious and obtain independent legal advice concerning purchasing or leasing property in the north.", *Cyprus, Country Specific Information*, U.S. Department of State, Bureau of Consular Affairs website, available at: http://travel.state.gov/travel/cis_pa_tw/cis/cis_1098.html (reiterating that, "The absence of a political settlement and the lack of international recognition for the 'TRNC' pose an inherent risk for the foreign investor interested in buying or leasing property in north Cyprus. Prospective property buyers should always seek legal advice before buying.").

Nor may Plaintiffs base their argument for personal jurisdiction on the alleged conspiracy between HSBC and the TRNC in attempt to manufacture jurisdiction.

"[P]laintiff[s] cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) *citing Rush v. Savchuk*, 444 U.S. 320, 332 (1980). For example, Plaintiffs allege that the "fraudulent scheme of the TRNC is assisted, supported or directed through HSBC and/or occurs in whole or in part in the U.S." (Compl. at ¶ 35). Not only does this particular allegation lack the required specificity by failing how or where HSBC's support of the TRNC occurs, it fails to tie any activity to the forum and even exhibits plain doubt as to whether the activity takes place in the United States. None of the alleged conspiratorial acts performed by the TRNC described by Plaintiffs in their Amended Complaint took place in the District of Columbia. Paragraphs 8, 9, 45, 46, 48, 50 in the Amended Complaint describe an alleged money laundering scheme *by HSBC* allegedly in support of the TRNC's sale of Cyprus properties through a website[9] without any specific allegations describing activity by the TRNC in the District of Columbia. "Since the 'bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction[,]' 'a plaintiff must allege specific acts connecting [the] defendant with the forum [.]'" *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) *quoting First Chicago,* 836 F.2d at 1378.

Further, Paragraph 9 of the Amended Complaint asserts that the "TRNC has received loans for financing and development based upon the equity of the properties belonging to the Plaintiffs and the Class. These banking transactions are directed, finalized, processed by and through HSBC and occur in whole or in part in Washington

---

[9] A website that in fact the TRNC has no connection to.

20

DC or London." This allegation, which is typical of many in the Amended Complaint, is not only insufficiently precise as to the location of the activity—"in Washington DC or London"—as to render the allegation useless for the Plaintiffs' jurisdictional argument for the TRNC, but actually does not describe any activity by the TRNC in the forum. It only vaguely describes activities *by HSBC* in the forum, or in London. These allegations are devoid of any link to the forum, as is the alleged dispossession of real property in the northern part of the island of Cyprus, the focus of the Amended Complaint.

      ii.     **PLAINTIFFS' ALLEGATIONS REGARDING MILITARY EQUIPMENT PRESUMBALY OBTAINED IN THE FORUM DO NOT CONTAIN THE SPECIFIC FACTUAL ALLEGATIONS REQUIRED BY FEDERAL RULE 8(a) AND THE DISTRICT OF COLUMBIA LONG ARM STATUTE AND ARE DEMONSTRABLY FALSE**

       The only remaining argument that Plaintiffs could assert toward the assertion of specific personal jurisdiction case must be based upon the vague references in the Amended Complaint regarding TRNC's use of U.S. military equipment. Plaintiffs allege the TRNC, with "weapons equipment and arms obtained from the U.S." interferes with rights in property belonging to Plaintiffs and the Class. (Compl. at ¶¶ 7, 36). This allegation is irrelevant to Plaintiffs case of personal jurisdiction in the forum because they do not specify who obtained the equipment, how the equipment was obtained or even where in the United States any of the "obtaining" occurred. In any event, the TRNC cannot obtain arms from the United States as the United States explicitly forbids commercial military exports to any armed force on Cyprus other than the United Nations Peacekeeping Force in Cyprus ("UNFICYP"). Department of State Denial Notice, 57 C.F.R. 60265 (explaining that, "The U.S. Government opposes of such exports because

of their ability … to hinder U.S. and U.N. efforts to reach a fair and permanent settlement

of the Cyprus dispute."). Moreover, the TRNC has never obtained arms from the United

States. (Rep. Akil Aff., Exhibit 1 at ¶ 35). "My understanding is that U.S. law would

forbid exports of military equipment to either of the Cypriot communities." Because, the

D.C. Long Arm Statute requires that a cause of action be based upon a jurisdictional tie to

the forum and there are no jurisdictional allegations linking the TRNC's alleged use of

U.S. military equipment to the forum; the Court does not have personal jurisdiction over

the TRNC for any causes of action related to the demonstrably false allegation regarding

the purchase of military equipment in the District.

C.   **PLAINTIFFS' AMENDED COMPLAINT FAILS TO ALLEGE
     FACTS UPON WHICH THE COURT MAY ASSERT GENERAL
     PERSONAL JURISDICTION BECAUSE THE TRNC
     REPRESENTATIVE OFFICE'S CONTACTS WITH THE U.S.
     GOVERNMENT ARE EXCLUDED FROM CONSIDERATION
     UNDER THE GOVERNMENT CONTACTS EXCEPTION**

The range of the TRNC's contacts with the forum described in Plaintiffs'

Amended Complaint that are unrelated to their causes of action but which could arguably

support a case for general personal jurisdiction are either excluded from analysis by the

government contacts exception, or are insufficient to meet the "continuous and

systematic" standard. General jurisdiction may exist over a foreign corporation for

claims that do not arise from the corporation's conduct within the District, if the

corporation is "doing business" in the District and its business contacts are "continuous

and systematic." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509-10 (D.C. Cir.

2002) (internal citations omitted).

An exception to this rule however is found in the government contacts exception.

As developed by the courts of the District of Columbia, the government contacts

exception provides that "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (en banc). The rationale for this exception finds its source in the unique character of the District of Columbia as the seat of national government and in the correlative need for unfettered access to federal departments and agencies. To permit courts in the District of Columbia to assert personal jurisdiction over nonresidents whose sole contact with the District consists of dealing with a federal instrumentality not only would pose a threat to free public participation in government, but also would threaten to convert the District of Columbia into a national judicial forum. *Id.*, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983) (holding that the defendant's contacts with the Interior Department in negotiations for a lease agreement were excluded by the government contacts principle); *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, 173 F.3d 829 (Fed. Cir. 1999); *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 50 (D.D.C. 1994) (applying the government contacts exception to exclude contacts with federal government from due process analysis); *Investment Co. Inst. v. United States*, 550 F. Supp. 1213, 1216 (D.D.C. 1982) (excluding those business activities that involved the provision of information to or receipt of information to the government from the Court's weighing of contacts relevant to personal jurisdiction); *Savage v. Bioport*, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (holding that the nonresident defendant's contacts with Department of Defense were made in an attempt to influence government action; therefore, its contacts were excluded by the

23

government contacts principle from establishing jurisdiction).[10]  The government

contacts exception covers contacts with all three branches of the federal government,

including federal agencies.  *See Mallinckrodt Med. v. Sonus Pharmaceuticals*, 989 F.

Supp. 265, 271 (D.D.C. 1998); *Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 236 (D.D.C.

2005).

    The TRNC's presence in Washington, D.C. falls under the government contacts

exception.  Its contacts here are associated with interacting with the United States

government, including such activities as monitoring Congressional action that may

concern northern Cyprus and arranging or holding meetings with Department of State or

Administration personnel and their staff and Members of Congress or their staff.  (Rep.

Akil Affidavit, Exhibit 1 at ¶¶ 16, 19, 23).  The TRNC maintains an office in

Washington, D.C. entitled, "Representative Office of the Turkish Republic of Northern

---

[10] Two years after *Environmental Research* the District of Columbia Court of Appeals attempted to narrow the exception on First Amendment grounds.  *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978).  But as explained in *Zeneca, supra*:

> Many federal courts sitting in the District of Columbia, however, have adopted the broad interpretation of the exception as espoused in *Environmental Research* and have noted that the *Rose* panel could not overrule the en banc decision in *Environmental Research. See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786 (D.C. Cir. 1983) (explaining that the Rose panel opinion cannot overrule the en banc decision in *Environmental Research* and expressing hesitancy towards adopting the Rose approach). For example, in *Investment Co.*, the court explained: The federal cases from this circuit applying the government contacts principle in their respective circumstances, however, have not spoken in traditional First Amendment terms in doing so. They have simply discounted the defendants' business activities in the District by the amount they involved getting information from or giving information to the government, or getting the government's permission to do something, which can only be done in Washington because that is where the government is.

*Zeneca*, 173 F.3d at 831-832.

24

Cyprus." All of the office's employees serve to contact directly members of the U.S.

government and to monitor U.S. governmental action that may impact the TRNC. (Rep.

Akil Affidavit, Exhibit 1 at ¶ 19). All expenditures, detailed in the office's foreign agent

registration reports filed with the Department of Justice, demonstrate their unambiguous

relationship to this end. (Rep. Akil Affidavit, Exhibit 1 at ¶ 19, FARA Reports, Exhibit

5). The office is headed by Mr. Hilmi Akil who was dispatched to this office by his

government. (Rep. Akil Affidavit, Exhibit 1 at ¶ 19). Shortly after his arrival, the U.S.

State Department provided a letter to Mr, Akil, acknowledging his purposes in the United

States. (Exhibit 3). The State Department, refers to Mr. Akil as, "a person favorably

known to the Department of State in his capacity as a foreign lobbyist and as formal

representative of the Turkish Cypriot community in Washington D.C."[11]  *Id.* The

Department of State acknowledges that Mr. Akil files as a foreign agent and that, "he

interacts with the Department of State officials on a regular, long-term basis." *Id.*

Commenting on his role as representative of his community on Cyprus, the letter restates

U.S. policy, which is grounded in acknowledging the two Cypriot communities: "[t]he

United States' overarching objective on Cyprus is to help foster a comprehensive

settlement that reunifies the island into a bi-zonal, bi-communal federation between the

Greek Cypriot and Turkish Cypriot communities." *Id.  See*, July 7, 2008 Statement of

Assistant Secretary of State Daniel Fried, (stating "We support a bizonal, bicommunal

federation," available at: http://nicosia.usembassy.gov/USpolicy/sp-

---

[11] As indicated in the third paragraph of this letter, the term "Turkish Cypriot community" refers to the ethnically Turkish residents on the island of Cyprus, not those Turkish Cypriots in the Washington, D.C. area, of which there are very few. Mr. Akil, is thus the Washington representative of one of the two ethnic communities on the island of Cyprus.

25

ASFriedTranscJul08.htm (last visited February 10, 2010) and U.N. Security Council

Resolution 1898 (2009) (reiterating "the Secretary-General's firm belief that the

responsibility for finding a solution lies first and foremost with the Cypriots themselves,

.. [and that  the goal is] to reach a comprehensive settlement based on a bicommunal,

bizonal federation with political equality....").

        Mr. Akil's purposes, then, are to work with and educate members of the U.S.

government, primarily in the executive branch, but also in the legislative branch, (Rep.

Akil Affidavit, Exhibit 1 at ¶ 16), to achieve the very same end that the United States is

seeking.  These efforts are exemplified in the two most recent foreign agent registration

statements filed by Mr. Akil with the U.S. Department of Justice.  (FARA Reports,

Exhibit 5).  Neither the TRNC nor its Representative Office engages in commercial

relations with the U.S. government nor do they solicit funds from the U.S. government.

(Rep. Akil Affidavit, Exhibit 1 at ¶ 16).  *Cf. Ramamurti v. Rolls-Royce, Ltd.*, 454 F.

Supp. 407, 411 (D.D.C. 1978) (describing defendant's activities in the District as

"substantial commercial relations with the federal government acting in its proprietary

capacity," and on this basis finding personal jurisdiction).  Because the TRNC's contacts

with the federal government are not commercial in character, they ought to be excluded.

*Hughes v. A.H. Robins*, 490 A.2d 1140, 1145 n.4 (D.C. 1985); *Crane*, 814 F.2d at 761.

*Hughes* addressed an instance in which a defendant maintained an office in the District of

Columbia "for the purpose of monitoring congressional legislation affecting [its]

industry. 490 A.2d at 1143. The court determined that "those activities which are

conducted here solely for the purpose of gathering information from the federal

government are not 'contacts' within the meaning of *International Shoe* and its progeny."

26

If Plaintiffs are able to force the Court to adjudicate a dispute among non-residents over land in Cyprus based upon the presence of the TRNC's governmental relations office, than the District of Columbia would come one step closer to becoming a catch-all international litigation forum.

**D. SHOULD THE COURT FIND THAT SUFFICIENT MINIMUM CONTACTS EXIST, THE ASSERTION OF PERSONAL JURISDICTION WOULD NONETHELESS OFFEND THE CONSTITUTIONAL GUARANTEE OF DUE PROCESS**

The TRNC never could have reasonably foreseen that it might be sued in the District of Columbia by fellow non-residents over a dispute over land on the island of Cyprus. Even if the Court finds that the TRNC has sufficient contacts in the forum, the Court should decline to exercise jurisdiction as the assertion of jurisdiction would not comport with constitutional standards of "fair play and substantial justice." It is fair and reasonable for a defendant to anticipate being sued in the District if the defendant has "purposefully availed itself of the benefits and protections of the District in engaging in a business activity in the forum". *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) *citing Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985). If a defendant "manifestly has availed himself of the privilege of conducting business" in the forum, and "because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. The focus is placed on "the relationship among the defendant, the forum and the litigation" and it is fair to assert specific personal jurisdiction where a defendant "has purposefully directed its activities at District residents, and claims against it by a District resident" and the claims arise out of those activities. *Id.* The District has a "manifest interest in providing a convenient forum

27

in which its residents may seek relief for injuries inflicted by the nonresident defendant, especially where litigation within the District would not impose an undue burden on the nonresident defendant." *Id.*

But in this case, excluding the demonstrably false allegation of TRNC military purchases in the District of Columbia and the incoherent and conclusory insinuation regarding "counseling", the litigation is based upon alleged activities that have taken place on the island of Cyprus. None of the Plaintiffs are District of Columbia residents and Plaintiffs' Amended Complaint is devoid of any explanation as to how the TRNC directed its activities to any residents of the District of Columbia or purposefully availed itself of the benefits and protections of the forum's laws. When the Court focuses upon "the relationship among the defendant, the forum and the litigation" it can only come to the conclusion that it is unreasonable to exercise personal jurisdiction over the TRNC in this forum for a lawsuit concerning land disputes on Cyprus.

Furthermore, land claims litigation alleging identical or near-identical facts is currently ongoing in the domestic courts of southern Cyprus, at the European Court of Human Rights in Strasbourg, France, and at the Immoveable Properties Commission in Lefkoşa northern Cyprus. (Rep. Akil Affidavit, Exhibit 1 at ¶ 35-40; Defendant's Counterstatement of Facts at p.17-21). Greek Cypriots have been able to obtain relief of the nature requested by Plaintiffs in all of these tribunals.[12] (Rep. Akil Affidavit, Exhibit

---

[12] The damage awards in such fora however have been orders of magnitude lower than the preposterous sum, $400 billion, requested by Plaintiffs. The nonpartisan International Peace Research Institute in Oslo, Norway, which has extensively studied the property regime on Cyprus, estimates that solving all real property compensation claims on the island would take an estimated €15 billion, or about $20.5 billion, which is approximately five percent of what the Plaintiffs have requested. *See* Praxoula Antoniadou Kyriacou, Özlem Oğuz and Fiona Mullen, *Reconstructing a Reunited*

1 at ¶ 36, 39). Plaintiffs thus have avenues of relief on the island of Cyprus and within the European Union, of which they are citizens. Further, none of those jurisdictions and fora have precluded land claims litigation stemming from the division of Cyprus on the basis of a statute of limitations. By contrast, when this Court considered a similar matter, it did find that the District of Columbia's statute of limitations precluded such claims. *See Crist et al, v. Republic of Turkey*, 995 F. Supp. 5 (D.D.C. 1998) (dismissing the complaint as time-barred on May 12, 1995 in Judge Lamberth's original order; case later dismissed on basis of subject matter jurisdiction). The District of Columbia does not have a manifest interest in the resolution of this case and it is not fair or reasonable to subject the TRNC to the burden of litigating in a distant forum these questions, in which the District has little interest.

Any contacts for Plaintiffs' general jurisdiction case must pass through an additional constitutional filter prior to the Court's assertion of personal jurisdiction. Whatever contacts that arise from the TRNC's use of an office in the District that are not precluded from analysis as a result of the government contacts exception must also form a "continuous and systematic" pattern of contacts with the forum. A case of general personal jurisdiction must "meet the heavy burden of showing that the defendant's contacts with the forum are sufficiently continuous and systematic to warrant an exercise of general personal jurisdiction over a foreign defendant." *Miller v. Holzmann*, CA No.

---

*Cyprus,* January 2009, available at: http://www.prio.no/upload/The%20day%20after-2%20ENG-web.pdf. Moreover, the Amended Complaint at ¶ 12 indicates the possibility that there may be approximately 170,000 claimants. Applying this figure to the requested damage award requested by Plaintiffs would yield the figure that each claim in Cyprus could be worth an average of $2.35 million, also a preposterous sum that would make northern Cyprus property more valuable than that in Hong Kong or Monte Carlo.

95-1231(RCL), 2007 WL 778568, *2 (D.D.C. March 6, 2007) *citing Perkins Benguet Consol. Min. Co.,* 342 U.S. 437 (1952). The application of the government contacts exception however effectively precludes the Court's relying on the contacts associated with the use of an office in the forum. The remaining contacts are simply absent. Thus, the TRNC's contacts with the forum do not meet the heavy "continuous and systematic" constitutional burden required prior to allowing the Court to assert personal jurisdiction over a defendant based upon activity unrelated to the alleged activities that form the gravamen of a complaint.

## II.   PLAINTIFFS DO NOT PLEAD SUFFICIENT ACITIVITES PERFORMED BY THE TRNC IN THIS FORUM SUCH THAT VENUE MIGHT LIE HERE

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a plaintiff's complaint for improper venue in lieu of filing an answer. When a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper, "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum." *Freeman v. Fallin,* 254 F. Supp. 2d 52, 56 (D.D.C. 2003). In considering a motion to dismiss for improper venue, the Court must accept the plaintiff's well-pled factual allegations regarding venue as true, must "draw all reasonable inferences from those allegations in the plaintiff's favor, and must resolve any factual conflicts regarding venue for the plaintiff. *See Quarles v. Gen. Inv. & Dev. Co.,* 260 F. Supp. 2d 1, 8 (D.D.C. 2003), citing *James v. Booz-Allen, Hamilton, Inc.,* 227 F. Supp. 2d 16, 20 (D.D.C. 2002); *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001). If the Court finds that venue is improper, it must dismiss the action or, "if it be in the interest of justice," the Court may transfer the action "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision whether

30

to dismiss the action or transfer it is committed to the "sound discretion" of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Plaintiffs allege that venue is proper under 28 U.S.C. § 1391 "because Defendants' commercial acts or omissions giving rise to this action substantially or materially occurred in the District of Columbia and Defendants maintain offices and transact business in the District of Columbia related to Plaintiffs' claims." (Compl. at ¶ 3). The TRNC has demonstrated that it has not engaged in any commercial acts in this forum, certainly not any that could be tied to the causes of action alleged in the Amended Complaint. *Supra*, at p.10-21.

The deficiency in Plaintiffs' personal jurisdiction allegations and the TRNC's counter proof also demonstrate that venue can not rest upon the presence of the TRNC's Representative Office in the District. A defendant's contacts for the express purpose of interacting with the U.S. government cannot "constitute jurisdiction (and correspondingly venue) because the government contacts doctrine 'precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency.'" *Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F.Supp.2d 153, 162 (D.D.C. 2008).

And finally, excluding the present case from venue in the District of Columbia would not leave the Plaintiffs without an available forum for relief for, as this memorandum and the attached exhibits demonstrate, alternate fora exist to pursue legal remedies outside of the District of Columbia.

31

III.    **THE CLAIMS OF MICHALI TOUMZOU SHOULD BE DISMISSED DUE PLAINTIFFS' VIOLATION OF LOCAL RULE 5.1(e)**

Plaintiff's original and amended complaints in their captions and in their text, (Compl. at ¶4), state that Plaintiff Michali Toumazou is "a resident of North Carolina," but Mr. Toumazou's full residence address has never been provided as required by Local Rule 5.1(e): "[t]he first filing by or on behalf of a party shall have in the caption the name and full residence address of the party." Plaintiffs provide only a post office box. Local Rule 5.1(e), allows 30 days to cure such an error, but this time has long expired. Indeed, though Plaintiffs have amply taken the opportunity to file successive amendments of their original complaint, filed on October 19, 2009, some 159 days ago, they have not bothered to provide a residence address for Mr. Toumazou. The rule states that "[f]ailure to provide the address information within 30 days upon filing may result in the dismissal of the case against the defendant." The dismissal of the claims of a single plaintiff in this matter ought not cause excessive lament given that the Amended Complaint alleges the possibility that as many as 170,000 individuals may have similar claims and seeks to certify a class. (Compl. at ¶¶ 12, 76). But a violation of Local Rule 5(e) is more a matter of substance than form: where a party resides can be critical to a court's consideration of both subject matter and personal jurisdiction. Plaintiffs' error here, which has persisted despite numerous opportunities to cure, should not be rewarded and Mr. Toumazou's claims should be dismissed.

## CONCLUSION

Sweeping aside the clutter of the Amended Complaint's inflammatory rhetoric and self-serving suppositions, an examination of the its personal jurisdiction allegations

reveals that the contacts regarding the marketing and sale of properties in northern

Cyprus lack sufficiently specific detail to meet the pleading requirements of Fed. R. Civ.

P. 8(a). Furthermore, Plaintiffs failed to submit concrete evidence of personal

jurisdiction required by Rule 8, which does not require the Court to rely upon Plaintiffs'

allegations as true. Instead Rule 8 requires the Court to examine evidence submitted by

the TRNC. This evidence further disproves Plaintiffs' claims of the TRNC's commercial

intercourse through a website that the TRNC does not own and the TRNC's purchase of

military equipment from the U.S.

If the Court finds contacts by the TRNC with the forum, an assertion of personal

jurisdiction would not comport with the constitutional standards of "fair play and

substantial justice."

Plaintiffs' conclusory allegations do not meet the requirement of Rule 8(a);

therefore their Amended Complaint should be dismissed for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2) and lack of venue pursuant to Fed. R. Civ. P.

12(b)(3). Further, the Court should dismiss the claims of Michali Toumazou pursuant to

Local Rule 5.1(e).

Dated March 26, 2010                     Respectfully submitted,

**/s/ Steven R. Perles**                 **/s/ David S. Saltzman**
Steven R. Perles (No. 326975)            David S. Saltzman (No. 436201)
Edward MacAllister (No. 494558)          SALTZMAN & EVINCH, PC
PERLES LAW FIRM, PC                      655 15th Street, N.W.
1146 19th Street, NW                     Suite 225-F
5th Floor                                Washington, DC 20005
Washington, DC 20036                     Telephone: (202) 637-9877
Telephone: (202) 955-9055                Telefax: (202) 637-9876
Telefax: (202) 955-3806

Attorneys for Defendant
Turkish Republic of Northern Cyprus

33