IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHALI TOUMAZOU, *et al.* | : |
| | : |
| Individually and on behalf of all others similarly situated | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : |
| v. | : Case No. 09-1967 (PLF) |
| | : |
| | : |
| TURKISH REPUBLIC OF NORTHERN CYRPUS, e*t al.* | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## PLAINTIFFS" OPPOSITION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS[1]

The United States Court of Appeals for the 7th Circuit, in affirming a decision where the now Defendant "TRNC" sought to intervene in litigation involving property from the north of Cyprus namely, Christian mosaics, by wrongfully claiming title to the property under its constitution, quoted the Siege of Corinth by Lord Byron.  "As Byron's poems laments, war can reduce our grandest and most sacred temples to mere "fragments of stone". Only the lowest of scoundrels attempt to reap personal gain from this collective loss.  Those who plundered the churches and monuments of a war-torn Cyprus , hoarded their relics away, and are now smuggling and selling them for large sums, are just such blackguards" See *Autocephalous Greek Orthodox Church of*

---

[1] Plaintiffs' counsel has experience more than his share of computer issues unrelated to the scanner but in an attempt to upload the files that are substantial, the files were not loading properly despite accessing the ecf filing system on the evening of May 4, 2010 to file. Plaintiffs' counsel has been the victim of a cyber attack on his computer system that was thought to have been resolved. Plaintiff is submitting this late due to the problems uploading files and in the event the files cannot be filed electronically, what can be filed will and the remaining shall be presented to the clerk in the morning of May 5, 2010 for a solution.  Plaintiff's counsel apologizes to the court and Defendant who will not be prejudiced unfairly by the additional hours needed to accomplish this filing one way or the other.

*Cyprus, et al v. Goldberg, et al 917 F.2d 278 (7th Cir. 1990)*. The court rightfully resolved the title to property in favor of the Church of Cyprus.

According to the affidavit of the so called "TRNC" Representative in Washington DC, Himil Akil, the sole purpose for the "TRNC" office in the United States is to "interact with the United States Federal Government... gathering information on legislation and U.S. Policies that may impact Turkish Cypriot people and informing the U.S. Government of my Government's position and opinions vis-à-vis such legislation and policies". The credibility of the "TRNC" and its agents are simply tumbling while not respecting the laws of the District of Columbia or United States.

## I.   INTRODUCTION AND FACTS SUPPORTING PERSONAL JURISDICTION

This lawsuit brought as a result of the interference and deprivation of the rights towards property belonging to the Plaintiffs and the Class by the pseudo state, Defendant so called "TRNC" from at least 1983 and continue to do so to the present (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31, 34, 35, 39-42, 45-60, 64-71).

The Defendants "TRNC" and HSBC[2] are actively engaged in the advertising, marketing, financing, encumbering, developing, leasing, renting, using or selling of property belonging to the plaintiffs and the Class, and restricting their return by the threat of force, in violation of law (id. Also See ex. 5,7 and 8). The pseudo state "TRNC" is more closely associated with an illegal criminal syndicate than that of a government, as it has and continues to wrongfully interfere with the rights of property owners and discriminate against them  (Id.).  The United States Government has issued warnings to banking institutions about dealing with the TRNC.  As a matter of fact, the State Department website has issued warnings about the title of the property, yet HSBC knowingly assisted in interfering with the rights to property of hundreds of thousands of individuals, including the Plaintiffs and the Class (Id.).  The

---

[2] HSBC refers to all the banks using the HSBC named in the Complaint or otherwise referred to therein.

pseudo state, "TRNC", illegally governs, sells, finances, rents, leases, advertises, taxes, profits and markets the properties, businesses and lands belonging to the Plaintiffs' and the Class to others, including third parties, under a fraudulent property scheme involving HSBC, real estate brokers and other companies located in the U.S and elsewhere (Id).; See Also Ex. 1 and 5).

The so called "TRNC", is not sovereign nation, government or diplomatic body recognized by the civil world nor by the executive office of the United States but acts as an unincorporated association committing illegal acts towards the Plaintiffs and the Class, that is not registered with the authorities of the District of Columbia or obtaining U.S. diplomatic status exemptions (id.).  The 'TRNC" believes it has duped authorities by concealing who and what it is, which includes Himil Akil, a known lobbyist and representative of the "Turkish Cypriot Community" as proclaimed by the U.S. Government, and not a representative of the "TRNC" or any it government. (See Ex.2 - Ltr. from US Dept of State- June 14, 2007 addressed to whom it may concern). Mr. Akil, despite his audacious reference as an ambassador in the U.S, is nothing more than a lobbyist and representative of a "Turkish Cypriot Community" and not a diplomat visa or the representative of the "TRNC" or so called 'Turkish Republic of Northern Cyprus" (Ex. 1 and 2).  In the eyes of the U.S. Government and the courts, Mr. Akil is a lobbyist given a business visa to conduct his business and treated as such by the U. S Government concealed within the Defendant's exhibits. (See Ex. 3 -Himil Akil Visa and passport; Also Ex. 2).   The use of "TRNC" as anything related to a government or state, even diplomatic status does not exist in the eyes of the U.S. Government and therefore the courts (See Ex.2).  Therefore, any acts by Mr. Akil and the "TRNC" are pervasive, systematic and continuous in the District of Columbia and the United States since the 1980's that includes references to it as an embassy, government, "defacto" state or  republic, that include  seeking litigation in federal court in 1989, banking transactions with HSBC, website development, hiring employees, meeting with individuals, advertising property, Tips to buy property, how to buy property,

explaining property laws,   (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31, 34, 35, 39-42, 45-60, 64-71; Ex. 2, Ex. 4- Affid. Izzet Zorlu[3] ¶7; Also See Ex's.,5, 7-8).

No where in any of the Defendant's opposition does it or Mr. Akil, suggest to use the proper title given to it, namely, a lobbyist or the" Turkish Cypriot Community", by the U.S. Government in any material, website content and development, filing court documents, literature, business cards, letterhead, office listing but rather "TRNC"  or "Turkish Republic of Northern Cyprus" and references to Government operations. (Id.).

Despite the assurances of the so called "TRNC" that it resides in the District of Columbia solely for contacts with the U.S. Government[4] (without ever providing a scintilla of proof to a request to come and open offices in the District of Columbia since at least the 1980's). The so called "TRNC" has engaged in the following, unrelated to U.S. Government legislation towards the "Turkish Cypriot Community", activities in the District of Columbia since the 1980's:

1)      In 1989, the "TRNC" through its Washington DC office, sought to intervene in

litigation before the USDC in Indianapolis and claim ownership of ancient mosaics

---

[3] Izzet Zorlu has provided an affidavit that is not based on his personal knowledge and therefore improper and should not stand for the purposes provided for by the Defendant.  Likewise, Mr. Himil's affidavit is allegedly based on personal knowledge of facts with exceptions that are not discernable. In other words, it is impossible to view someone appointed to an alleged post as a representative of a "Turkish Cypriot Community" in 2006, to have personal knowledge of facts relating to Cyprus for hundreds of years, let alone not.   Clearly, these are Defendant's self serving declarations sought to interfere with the administration of justice and this court's power over it that necessitates jurisdictional discovery to flush out the facts.  Clearly, the extent of business activity or contacts in the District of Columbia, such as congressmen, DC Government authority to operate in the District, banking information, schedules, appointments, business policies, Himil Akil's  bank account activity, including HSBC, and other employees and staff, any payments made on its behalf, the lease and payments to the landlord, where the money originates, loans provided to or obtained from the SBA.  Also, who constructed its website and provided its content is jurisdictional in nature and is discoverable.  The Defendant and Mr. Akil have the contents of the website and have refused to provide it and rather give us their representative "opinion" of the content.   This is a classic "sandbagging" technique that individuals use to conceal facts and not for the administration of justice perhaps it is the way things are done in the "Turkish Cypriot Community" but not in the United States and certainly not before this court.  I urge the court to compel the discovery that is material and demonstrate the contacts in the District sufficient for personal jurisdiction.
[4] Aff. of Akil.

belonging to the Church of Cyprus, which is the same issue before this court.  (See Ex. 7 ).  The court properly did not recognize it as a state or government[5].

2)   Hiring employees from abroad and sending them as representatives or staff to the District of Columbia , leasing office space, hiring and paying lawyers, letterhead, interactive website, phone, email, facsimile, maps and a DC postal address, writing letters to newspapers, speaking at universities , having offices other  "TRNC" representative who are business owners, (See Ex. 1-Akil  Aff.; Ex.s' 11, 12).

3)   Involved itself in the Small Business Administration's  "Entrepreneur" conference held in the Southern United States after it allegedly abandoned its website in 2005, that ironically was listed in SBA document in its conference material of April 2006. (See Ex. 9 - Entrepreneur- pp, 60 and 66 in fn. 10, 16).  The trncwashdc.org website appears with the director of the SBA Mr. Doug Gurley, who suggests the members, that indicates the trncwashdc.org website/office, provided loans or funds in the amount of $75,000.00 to assist businesses affected by hurricane Katrina. (Id. Also see Ex. 10- Doug Gurley statement)

4)   Himil Akil, is a known lobbyist and representative of the "Turkish Cypriot Community and not the so called "TRNC" and has no diplomatic status or visa, nor is his employer recognized as a government or state in the United States.  (See Ex.2 )   Despite this, Mr. Akil held himself out as an ambassador in Washington DC to at least Turkey without blinking an eye as to the laws of the United States and its rule of law. (See Ex. 1  ¶ 16); also Ex. 14. .

---

[5] The "TRNC"  by filing a counterstatement of facts of 20 pages, and other unrealistic facts attributing the recognition of the "TRNC" as a government or state should not be tolerated by this court pursuant to Article III of the U. S. Constitution. This court is much smarter than what the "TRNC" is trying to sell as if no one would notice. Therefore, Plaintiffs seek to strike all allegations referencing any government action on its part of others and to submit to the court its true identity that being an unincorporated association of the "Turkish Cypriot Community" as properly titled by the U.S. Department of State.   Plaintiffs move this court to strike the content as it reaches the realm of politics and not appropriate for this court to entertain but left to the executive branch.   Plaintiffs will file a separate motion to strike if necessary by the court. (See Ex. 8).

5)      Does banking transactions with HSBC and its network of institution under its name that assist in marketing, sale, advertisement, financing, of properties belonging to the Plaintiffs and the Class. , (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31, 34, 35, 39-42, 45-60, 64-71¶, maintained an operated a website with an internet address of www.trncwashdc.org since the 1990's as admitted by the Defendant. (See  Akil Aff. ¶ 28); also Ex.'s 5, 11 and 12).

6)      The website material consist of more than what Mr. Akil is stating in his Affidavit and includes purchasing property, and other commercial acts, airline fares, cruises, banking transactions, tourism, laws, and the address of the Washington DC office and contact information.   The trncwashdc.org website was interactive prior to being taken down and had substantial visitors (See Ex.'s 5, 16 and 18).

7)      Monies must be transferred to and from banking institutions namely, defendant HSBC, with whom it conducts business transactions and maintains bank accounts, to at least pay the over $300,000.00 expenses run through its DC office.

8)      Mr. Akil misrepresents the facts of a disclaimer that the "TRNC" has no control or authority over  the website www.trncproperty.eu "(Ex. 2 at ¶,33) Rather, the "TRNC" website under terms and conditions states  in its disclaimer on several pages in bold lettering that it does belong to the "TRNC"  (See Exhibit 6- Disclaimer).  The Defendant even admits to several other websites operating without allegedly "TRNC" authority but fail to divulge the websites. (Id. ¶,34).

9)      The "TRNC" is operating without a business license issued by the DC Government, nor has it provided any evidence of paying taxes in the District despite admitting to having and paying employees, having leased office space that requires a certificate of occupancy that is not shown in any records of the DC Government (See Ex. 14).

10)      The TRNC has a West coast representative (who happens to be a business man and operating a substantial company) and a NY Representative all using the title of

representative of the "Turkish Republic of Northern Cyprus" that does not exist as a recognized or registered entity, let alone a state or government in the District of Columbia (See Ex . 2, 11 , 14 - 16).

## II.   LEGAL ARGUMENT

Defendant has moved, pursuant to Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure, for an order dismissing this action for lack of personal jurisdiction or Venue[6], and to Dismiss Plaintiff MICHALI TOUMAZOU[7] for failing to provide his exact home address. Defendant's argument throughout its motion is that it is present strictly to interact with the U.S. Government and seeks "defacto" immunity when in fact the Plaintiffs, this court and the world have no idea what the so called "TRNC" really is and is explained herein.  What we do know is that "it" is not a government or state which it holds itself out to be to the unknowing public in the United States and has no diplomatic status or recognition whatsoever, which begs the question what is the so called "TRNC".

---

[6] The USDC for the District of Columbia is the proper Venue for this matter because one of the Defendant's, HSBC, at least is properly present in the United States and in the District Columbia. See 28 USC. 1391(b)

[7] The Defendant's attack on a requirement for the home address of MICHALI TOUMAZOU (hereinafter "TOUMAZOU") is misplaced.  TOUMAZOU is a professor at a prestigious university and seeks to protect himself and his family from the intrusion of what maybe threats towards him, which is a real fear.  TOUMAZOU has asked not to expose his family to any animosity that may exist because of the nature of this case and the political climate. Believing the Local Rule allowed counsel to list the address on the caption TOUMAZOU as filed was sufficient under the Rule that was recently amended. TOUMAZOU lives and works in the town of Davidson, North Carolina and the Post Office Box is located at the University where he works as an internationally acclaimed Archeologist and professor in classics.  Plaintiff requests this court to allow TOUMAZOU this small sanctuary.  Should this court not agree, Plaintiffs ask to provide the actual home address if necessary, and preferably under seal.   Despite the temper of Defendant's argument regarding TOUMAZOU, he is in effect necessary for subject matter jurisdiction, which issue no doubt Defendant seeks to raise should this court dismiss TOUMAZOU.  If the court is inclined to do that, Plaintiff asks that this court allow a short period to provide the court that information.  I believe the intent of the Rule was to protect forum shopping, and the Plaintiff is a resident of Davidson, NC.

In it's Motion to Dismiss, the so called "TRNC" attempts to trick this court so it may be viewed as it so desperately sought for over 20 years in the District of Columbia, namely a recognized government.  The "TRNC" seeks "defacto" government status by masquerading its so called representatives among embassies, the UN and referring to themselves as either a representative and at times an ambassador, it is clear that members of the public in the District and elsewhere are being tricked by the intentional misrepresentations by this Defendant, when no such entity known as the "TRNC" or "Turkish Republic of Northern Cyprus" exist in the District of Columbia. Moreover, the U.S. Department of State has made it clear, that Mr. Akil is a lobbyist and a representative of the "Turkish Cypriot Community" and does not recognize the pseudo state or "TRNC"  (See Ex.  1, 2 , 6 -8).

Additionally, there is legal support to stop the Defendant from attempting to provide good faith gestures from the United States into being diplomatic status when it is not.  Without giving any substance to its deceptive Motion to Dismiss, one must wonder what is the Defendant thinking parading itself before the court as a government when it is not, hoping the court will provide some recognition that it is a government over nearly 40% of the island nation of Cyprus. It is the Republic of Cyprus that has been the only recognized sovereign on the island except for Turkey. The attempt is clear, that it is trying to use court access to promote that it is a government or state.  From its counter statement of false facts to its disregard for U.S. standards and laws, the "TRNC" cannot be allowed to parade itself before this court and the citizenry of the District of Columbia as a recognized or "defacto" government of the "TRNC" or equivalent. The "TRNC" is not.   Courts in the U.S. admonished the "TRNC" in the past for doing just that when it sought to intervene and take title to mosaics belonging to the Church of Cyprus for over a millennium. This is the same issue here except it now knows it has no defense and chooses to

hide.  *See Autocephalous Greek Orthodox Church, et al v. Goldberg, et al, 916 F.2d 278 (7th Cir. 1990); See also Autocephalous Greek Orthodox Church v. Goldberg,717 F. Supp. 1374  (IN. 1989)* and are attached as Exhibit 8.

The conduct of foreign relations was committed by the Constitution to the political departments of the government, and the propriety of what may be done in the exercise of this political power [is] not subject to judicial inquiry or decision, . . . [and] who is the sovereign of a territory is not a judicial question, but one the determination of which by the political departments conclusively binds the courts. (Id .citing *United States v. Belmont,* 301 U.S. 324, (1937) (citing *Oetjen v. Central Leather Co.,* 246 U.S. 297, (1918)).   The 7th circuit would not allow it and neither should the learned Judge of this court.   Plaintiffs ask that an Order issue restricting its authority to argue, reference or discuss government matters as it seems to be encroaching on the court's powers and authority.  The "TRNC" is strictly a foreign unincorporated association and nothing more and ask the court that all references regarding it acting in any governmental or diplomatic role or function including but not limited to titles.

### A.  Establishing Personal Jurisdiction

"To establish personal jurisdiction over a non-resident, a court must engage in a two part inquiry: a court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." See *GTE New Media Servs. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).*

The D.C. Circuit has defined the bases for long-arm jurisdiction in this District are as follows:  "to establish specific personal jurisdiction under the District long-arm statute, [the plaintiff] would have to demonstrate either (1) that its claims arose from the defendant

transacting business in the District of Columbia . . .; or (2) that [the defendant] caused it tortious injury in the District by its conduct in the District . . .; or (3) that [the defendant] caused it tortious injury in the District by its conduct outside the District and that [the defendant] "regularly does or solicits business" in the District, "engages in any other persistent course of conduct" there, or "derives substantial revenue" from goods used or services rendered". *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1280* (*Fed. Cir. 2005).*

Based on the facts presented herein, there is no doubt that the defendant caused violated the Lanham Act by making false allegations about ownership and title of property situated in the north of Cyprus in the District of Columbia as it related to its "official" status and to the title/ownership of property considered abandoned yet belonging to the Plaintiffs and the Class who have proper title and seek its return[8].

### B. **Defendant Was Properly Served in the District of Columbia**.

The constitutional requirements have been held to be "co- extensive" with a D.C. general personal jurisdictional provision, D.C. Code § 13- 334(a), which authorizes D.C. courts to "exercise general jurisdiction" over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is doing business in the District." See *AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F. Supp.2d 64, 74 (D.D.C. 2004); quoting Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002*). This "doing business" test "is whether [the defendant"s] contacts with the District have been so continuous and systematic that it could foresee being haled into court in the District of Columbia." See *AGS*

---

[8] The "TRNC" is occupying the lands belonging to the Plaintiffs and the Class and do not let them return to their properties as indicated in the alleged constitution of the "TRNC"  (See Sec. Am. Compl.

*Int'l Servs. S.A. v. Newmont USA Ltd.346 F. Supp. 2d at 74.*

Although on its face § 13-334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District.  See *AMAF Int'l Corp.*, 428 A.2d at 850; *see El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996).

Since the Defendant has waived any issue of personal service[9] if an issue even existed, personal jurisdiction is established as a matter of law.  Therefore, Defendant's motion to Dismiss should be denied.

### C.  Claims Arise from Defendant's Transaction of Business in D.C.

Plaintiffs have alleged that monies wrongfully derived from the property belonging to the Plaintiffs' and the Class are transferred by and through HSBC, in the District of Columbia.  See The illegal gains are transferred through the HSBC banking system to and from the "TRNC" in whole or in part, that include the Washington DC offices of both Defendants. (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31, 34, 35, 39-42, 45-60, 64-71). The Defendant does not deny that it spends over $300,000.00 for its District operations without providing a source of income. Obviously a banking system is used to accommodate these transactions which the Defendant intentionally does not disclose but pays the bills for over 20 years in the District. (See Ex. 13- Accounting Report of Defendant's DC office).

The so called TRNC by and through Defendant HSBC has illegally profited to the detriment of the Plaintiffs from acts originating outside of the District of Columbia but include the District of Columbia as monies are transferred to and from bank accounts located in the

---

9

District of Columbia by agreement with HSBC. (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31,

34, 35, 39-42, 45-60, 64-71).   The fraudulent property scheme requires financing and the

transfer of funds that occurred through HSBC, in whole or in part, in the District of Columbia

(id).  The TRNC presence in Washington DC was not for government interaction or contact[10] as

clandestinely argued and presented but to assist in the transfer of funds illegally obtained from

property belonging to the plaintiffs to bank accounts with HSBC that occur in whole or in part in

Washington, DC.

Additionally, the false statements on the ownership of property as stated in its published

"constitution" giving rise to Plaintiffs' federal claim on the interactive website

www.trncwashdc.org, was maintained, controlled or operated by the Defendant admittedly until

at least 2005 (See Sec. Am. Comp. ¶¶ 2,3,8,9,10, 17-21, 31, 34, 35, 39-42, 45-60, 64-71; Akil

Affid.¶28-30, Ex. 5, 12, 17, 19-20).  This interactive website included the sale of property, how

to buy property, forms to be submitted for buying property, title of property, hiring attorneys and

estate agents, airlines, cruises etc. The website even contained the so called laws/constitution in

which the "TRNC" admits to interfering in the property rights of the displaced individuals

consisting of the Plaintiffs' and the Class. (Ex.'s 5, 19-20).

However, the Defendant has taken the website down under the pretext that it is owned and

controlled by another namely, Izzet Zorlu.  At the very least, if the court does not find the

necessary contacts, it is necessary to allow jurisdictional discovery so that the Plaintiffs can show

the full extent of contacts and representation made on the website, along with the banking

---

[10] The government contact exception to personal jurisdiction is nothing more than an attempt of "defacto" immunity.  The case cited by the Defendant relies upon a transient passing to file papers with an administrative agency rather than a over 20 year existence in District without abiding by its laws for doing business without a business license, certificate of occupancy nor paying DC taxes.  As a matter of fact, there is nothing evidencing the "TRNC" with the DC Government for service or process or otherwise which suggest "doing business" illegally without proper licensing that is a misdemeanor crime.  This Argument shall be supplemented (See Ex. 14).

information relevant and indicative of its nature of business in the District of Columbia, including meetings, visitors, loans, payments, articles, speaking engagements and business.

Based on the fats presented by the Plaintiff, and even the Defendant, sufficient contacts exist with the District of Columbia for this court to find personal jurisdiction over the Defendant "TRNC" having purposefully availed itself therein

**D.**    **Combined Internet and Non-Internet Related Contacts in the District of Columbia Are Sufficient to Establish Personal Jurisdiction.**

Generally, jurisdiction in cyberspace has revolved around two issues: passive web sites versus interactive web sites, and whether a defendant's Internet-related contacts with the forum combined with other non-Internet related contacts are sufficient to establish a persistent course of conduct.

"If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the court's exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site". *See Zippo Mfg. Co. v. Zippo Dot Com. Inc., 952 F. Supp. 1119, 1124 (W. D. Pa. 1997).*

In *Heroes, Inc. v. Heroes Foundation,*  the court found that it did not need to decide whether the defendant's home page by itself subjected the defendant to personal jurisdiction in

the District of Columbia because the defendant had substantial non-Internet related contacts with

the District that were sufficient under the D.C. long-arm statute.  The defendant's home page

solicited contributions and provided a toll-free number which browsers used to donate money;

the solicitation also appeared in advertisements in the Washington Post.  Judge Flannery

concluded that these non-Internet related contacts with the District of Columbia, together with

the maintenance of a web site constantly available to D.C. residents, constituted a persistent

course of conduct that reasonably connected the defendant to the forum. *Heroes. Inc, v. Heroes*

*Foundation*, 958 F. Supp. 1, 4-5 (D.D.C. 1996); *see also* *Telco Communications v. An Apple A*

*Day*, 977 F. Supp. 404, 407 (E.D. Va. 1997) (posting of web site advertisement solicitation over

the Internet, which could be accessed by Virginia residents 24 hours a day, is a persistent course

of conduct; two or three press releases rise to the level of regularly doing or soliciting business);

*See* *Digital Equipment Corp. v. Altavista Technology. Inc.,* 960 F. Supp. at 467 (maintenance of

web site that can be accessed by Massachusetts citizens 24 hours a day coupled with other

contacts is persistent course of conduct sufficient to confer personal jurisdiction).

    The courts in each of these cases required only a relatively tenuous electronic connection

between the creator of a web site and the forum to effect personal jurisdiction, so long as there

were sufficient other non-Internet connections. Under the analysis adopted by these courts, the

exercise of personal jurisdiction is contingent upon the web site involving more than just the

maintenance of a home page; it must also allow browsers to interact directly with the web site on

some level.  In addition, there must also be some other non-Internet related contacts between the

defendant and the forum state in order for the court to exercise personal jurisdiction.

    Justice Ginsburg in <u>Crane v. Carr</u> has described these as the "plus factors," factors that

demonstrate some "reasonable connection" between the jurisdiction in which the court sits

"separate from and in addition to" the injury caused in the jurisdiction. <u>Crane v. Carr</u>, 814 F.2d at 762. The "plus factor" or factors "need not be related to the act that caused the injury; all that is required is 'some other reasonable connection' between the defendant and the forum." <u>Id.</u> at 762-63.  The "plus factor" does not itself provide the basis for jurisdiction (the injury does) "but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliation with the forum." <u>Id.</u> at 763.

The Plaintiffs have shown a "persistent course of conduct" by the "TRNC" in the District of Columbia or other reasonable connections between the forum and the "TRNC" besides the alleged website use and the alleged injury of the false statements contained therein. Unfortunately for the Defendant, the "TRNC" tripped over its own lies when it stated its sole existence in the District of Columbia was to interact with the U.S. Government.  There is sufficient evidence showing, it engages in providing maps, meetings letters to newspapers that are published, Speaking at Universities, engaged in banking activities, hiring lawyers, trying to intervene as the rightful owners to Christian mosaics belonging to the Church of Cyprus and this is what can be found without discovery (See Ex.s'.  5, 11, 12, 13, 17, 19 and 20).  These facts alone establish contacts sufficient for personal jurisdiction and due process.  The concealment of obvious facts, left to the interpretation and control of material evidence including the website content that is no longer available in any manner even archived, without inspection or cross examination, is simply unfair and indicative of a scoundrel looking to hide through deception. Limited discovery on the agents and information possessed by the "TRNC" in Washington, DC are necessary to prove the contacts for personal jurisdiction should this court find them lacking.

The presence for over 20 years in the District of Columbia conducting business and litigation albeit unsuccessful, without obtaining a business license or otherwise registering its

name shows a disregard for the laws of this country.  The "TRNC" believes it can make its own

rules when it sees fit despite the requirements that it conform to the laws of the District of

Columbia due to its non government, diplomatic or "TRNC" status that it refuses to conform

(See Ex. 2). Mr. Akil believes because Turkey recognizes the "TRNC" that is provides him the

right in the United States to be referred to and title himself as an ambassador. Plaintiffs also note,

and Defendant admits, that he has been in contact (via e-mail, telephone and the U.S. mail) with

business visitors in the District of Columbia  (Aff. Akil  ¶¶  16, 25, 31).

        The interactive nature of the "TRNC" website coupled with non internet contacts are

sufficient, alone or together, to establish that Defendant engaged in a persistent course of conduct

in the District of Columbia.

        **E.        Due Process**

        Traditionally, in order to exercise personal jurisdiction over an out-of-state defendant, a

court must determine whether the defendant has sufficient minimum contacts with the

jurisdiction in which the court sits such that maintenance of a suit does not offend "traditional

notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S.

310, 316 (1945).  While in the Internet context there must be "something more" than an Internet

advertisement alone "to indicate that the defendant purposefully (albeit electronically) directed

his activity in a substantial way to the forum state," Cybersell. Inc. v. Cybersell. Inc., 130 F.3d at

414, such that he should "reasonably anticipate being hated into court" there, Burger King Corp.

v. Rudzewic , 471 U.S. 462, 474-75 (1985), that test is easily met here. See, e.g., Digital

Equipment Corp. v. Altavista Technology, Inc., 960 F. Supp. at 469-70.  Because subsection

(a)(4) of the long-arm statute does not reach the outer limits of due process, Crane v. Car , 814

F.2d at 762, and the Court has concluded that there are sufficient "plus factors" to meet the requisites of subsection (a)(4), it follows that there are also sufficient minimum contacts to satisfy due process.

For over 20 years, Defendant has purposefully sent employees, leased and occupied office space in the District of Columbia, where it seems to be lacking a business license or otherwise registering its trade name because there is no "Turkish Republic of Northern Cyprus" recognized by the U.S. Government unnervingly admitted by the Defendant.  During these years, and without rehashing the facts, the Defendant made banking transactions, hired lawyers, was listed as a speaker at University, wrote op-ed letters and submitted letters to the U.N., as matter of fact, even the newspapers contained the reference to the Washington DC "TRNC" website or its representative.   All of these facts, let alone the information on banking, meetings, letters, taxes, loans, payments to and from the Washington DC office as it operated at a substantial cost that funds to pay for them, including, by and through, HSBC[11], demonstrate the purposeful of the Defendant purposefully entered the District of Columbia to conduct business[12] for over 20 years that would foresee it being haled into court there.

**E.    In The Alternative, the Federal Long Arm Statute Provides Personal Jurisdiction Pursuant to FRCP 4.**

In some circumstances, Federal Rule of Civil Procedure 4(k)(2) eliminates the need to employ the forum state's long-arm statute. *See Mwani v. Osama bin Laden, 417 F.3d 1, 10 (D.C.*

---

[11] Additionally, since HSBC has not yet Answered or been served, which will be done shortly, it is premature and unfair to decide this motion against the Plaintiffs if the court was inclined to do so.  Rather, jurisdictional discovery should be allowed to go forward immediately to allow for Plaintiff to respond after having the information clearly withheld by the Defendant including but not limited to banking statements, website content and a list of U.S. citizens or DC residents who sought the services of the "TRNC" in Washington DC, and/or who have purchased property through the TRNC in the north of Cyprus.

[12] As the "TRNC" is not a government, the Defendant took a risk in entering the United States to what seems to be protect its interests namely the property that it allegedly rules over and sells the lands that belong to the Plaintiffs and the Class.  The Defendant cannot be shielded from what it purposefully set out to do and now finds itself in a legal quagmire.

*Cir. 2005)*. Should the court find that the DC long arm statute contacts requirement has not been satisfied, the federal long arm statute is designed to avoid the very injustice the so called 'TRNC" seeks to impose on this courts jurisdiction and integrity by false testimony of what and who it is let alone what it is doing in the District of Columbia, unregistered as a business, does, not pay taxes, does not have a certificate of occupancy not recognized diplomatically or as a state or government.

Under FED. R. CIV. P. 4(k)(2), a federal court can exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States.

In the instant case, the claims arise under federal law (Lanham Act) and the summons was properly served. Whether the exercise of jurisdiction is consistent with the Constitution turns on whether a defendant has sufficient contacts with the <u>nation</u> as a whole to satisfy due process. *See* FED. R. CIV. P. 4(k) advisory committee's notes to 1993 amendments.

The remaining question here is whether the "TRNC" is subject to the jurisdiction of the courts of general jurisdiction of any state." FED. R. CIV. P. 4(k)(2). Determining whether a defendant is subject to the jurisdiction of a court "of any state" presents no small problem. One could, of course, ponderously "traipse through the 50 states, asking whether each could entertain the suit." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* <u>256 F.3d 548</u>, 552 (7th Cir.2001).

A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable). If, however, the defendant contends that he cannot be sued in the forum state and

refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).  The plaintiffs have amply made a prima facie showing that the so called "TRNC" has "`purposefully directed' [its] activities at residents" of the United States, *Burger King,* 471 U.S. at 472, (quoting *Keeton,* 465 U.S. at 774), and that this litigation results from injuries to the plaintiffs "that `arise out of or relate to' those activities," *id.* (quoting *Helicopteros Nacionales,* 466 U.S. at 41). The "TRNC" therefore had "fair warning" that its activities would "subject it to the jurisdiction" of the United States. *Id.*

The fact that injured Cypriots[13], not injured Americans, are the plaintiffs in this case does not deny the court personal jurisdiction over the defendant(s). *See Calder v. Jones,* <u>465 U.S. 783</u>, 788, (1984) ("The plaintiff's lack of `contacts' [with the forum] will not defeat otherwise proper jurisdiction."); *Keeton,* 465 U.S. at 780 ("[The] plaintiff's residence in the forum State is not a separate requirement, and lack of residence will not defeat jurisdiction established on the basis of the defendant's contacts.").

The Defendant's decision to purposefully direct its so called government and laws, along with personnel, stationary, banking transactions, payroll, office space, and driver in the District and at the United States while also benefitting from bank transactions involving HSBC and the Plaintiffs properties, and the fact that the Plaintiffs' federal claims arose out of those activities, should suffice to cause the defendant(s) to "reasonably anticipate being haled into" an American court. *See Mwani v. Osama bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005)* citing *Burger King,* 471 U.S. at 474,(quoting *World-Wide Volkswagen,* 444 U.S. at 297).

---

[13] Defendant raises an argument that alternative fora exist such as the European Court of Human Rights that has recently or to go and see what the victimizer "TRNC" would provide for the victim plaintiffs, which is almost as insulting to the integrity and powers of this court to allow its jurisdiction to be taken away by a non-entity because it would like to bypass the rule of law yet again.

Despite the "TRNC" argument for alternative fora, a plaintiff's citizenship may affect whether the court has subject matter jurisdiction or the plaintiff has a cause of action but not where to litigate. Here, however, the plaintiffs have sued under the Alien Tort Claims Act, which the Supreme Court has held to supply both subject matter jurisdiction and a cause of action for a narrow set of claims brought by aliens and involving violation of the law of nations. *See Sosa v. Alvarez-Machain,* 542 U.S. 692, (2004).

Where a defendant, like the so called "TRNC" has purposefully directed his activities at forum residents and seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Mwani v. Osama bin Laden, 417 F.3d 1, 10 (D.C. Cir. 2005).*

Here, the defendant purposefully directed its activities at forum residents, the U.S. Government and others, located in the U.S. and the fact that the plaintiffs are Cypriots who were injured in the process is not a consideration that would render the assertion of American jurisdiction incompatible with substantial justice.  Therefore, under FRCP 4(k)(2) this court has personal jurisdiction over this defendant.  As an alternative, the Defendant may pick a proper forum of its choosing for this litigation, if this court finds the DC long arm statute is insufficient.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion to Dismiss must be denied in its entirety and allow jurisdictional discovery to commence immediately.

Respectfully submitted,


TSIMPEDES LAW FIRM                        Dated: May 5, 2010


BY:      /s/ Athan T. Tsimpedes, Esq.
         Bar no. 452341
         1050 Connecticut Avenue, NW            .
         Suite 1000
         Washington, D.C. 20036
         Phone: 202-772-3159
         Fax: 202-449-3499
         Attorney for Plaintiffs