UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
MICHALI TOUMAZOU, et. al.,                  )
                                            )
            Plaintiffs,                     )
                                            )
      v.                                    )      Civil Action No. 09-1967 (PLF)
                                            )
TURKISH REPUBLIC OF NORTHERN                )
CYPRUS, et. al.,                            )
                                            )
            Defendants.                     )
_____ )


OPINION

   This litigation arises out of the protracted conflict between Turkish and Greek

Cypriots.  See generally Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine

Arts, Inc., 917 F.2d 278, 280-81 (7th Cir. 1990); Crist v. Republic of Turkey, 995 F. Supp. 5, 7

(D.D.C. 1998).  "The Cypriot people have long been a divided people, approximately three-

fourths being of Greek descent and Greek-Orthodox faith, the other quarter of Turkish descent

and Muslim faith".  Autocephalous Greek-Orthodox Church v. Goldberg & Feldman Fine Arts,

Inc., 917 F.2d at 280-81.  Formerly under Ottoman and then British control, the Republic of

Cyprus was founded in 1960 by mutual agreement between Greece, Turkey, and Great Britain.

Id. at 280.  Animosity between Greek and Turkish Cypriots, who desired unification with Greece

or Turkey respectively, resurfaced shortly thereafter.  Id.  Intercommunal violence was common

throughout the 1960's and early '70s.  Id.

   This tension erupted in July 1974 when the Greek Cypriot military ousted the

joint Cypriot government.  TRNC Statement of Facts at 9; Crist v. Republic of Turkey,

995 F. Supp. at 7.[1]  In response, Turkey invaded Cyprus.  TRNC Statement of Facts at 10; Crist v. Republic of Turkey, 995 F. Supp. at 7.  In the bitter conflict that ensued, both sides committed atrocities.  See TRNC Statement of Facts at 9-10; Compl. ¶ 12; Pls. Mot. to Amend. Ex. 2 ¶¶ 15-16.  By the time a cease-fire was declared in August of 1974, Turkey had taken control of approximately one third of Cyprus, leaving many Greek Cypriots as refugees.  Compl. ¶¶ 10-11; TRNC Statement of Facts at 10-11; Crist v. Republic of Turkey, 995 F. Supp. at 7.  To this day, United Nations peacekeeping forces maintain the "Green Line" that separates the Turkish-occupied north from the rest of Cyprus.  Compl. ¶ 17; TRNC Statement of Facts at 12; Crist v. Republic of Turkey, 995 F. Supp. at 7.

In the aftermath, Turkish Cypriots established a functioning government called the "Turkish Federated State of Cyprus," which was succeeded by the Turkish Republic of Northern Cyprus in 1983.  TRNC Statement of Facts at 12; Crist v. Republic of Turkey, 995 F. Supp. at 7.[2]  The TRNC claimed ownership of all property it deemed was "abandoned" by Greek

---

[1]      The papers reviewed in connection with the pending motions, and the abbreviations used to identify them throughout this Opinion, are: Plaintiffs' Second Amended Complaint ("Compl.") [Dkt. No. 14]; TRNC's Motion to Dismiss for Lack of Personal Jurisdiction ("TRNC Mot.") [Dkt. No. 16]; TRNC's Counterstatement of Facts ("TRNC Statement of Facts") [Dkt. No. 16 Attach. 2]; Plaintiffs' Opposition to TRNC's Motion to Dismiss ("Pls. TRNC Opp.") [Dkt. No. 20]; TRNC's Reply to the Plaintiffs' Opposition to TRNC's Motion to Dismiss ("TRNC Reply") [Dkt. No. 26]; the HSBC Defendants' Motion to Dismiss for Failure to State a Claim ("HSBC Mot.") [Dkt. No. 43]; Plaintiffs' Opposition to the HSBC Defendants' Motion to Dismiss ("Pls. HSBC Opp.") [Dkt. No. 45]; the HSBC Defendants' Reply to the Plaintiffs' Opposition ("HSBC Reply") [Dkt. No. 47]; Plaintiffs' Motion for Leave to Amend the Second Amended Complaint ("Pls. Mot. to Amend") [Dkt. No. 29]; TRNC's Opposition to the Plaintiffs' Motion to Amend the Second Complaint ("TRNC Opp.") [Dkt. No. 31]; and Plaintiffs' Reply to TRNC's Opposition to Their Motion for Leave to Amend the Second Amended Complaint ("Pls. Reply") [Dkt. No. 42].

[2]      The U.N. Security Council denounced the TRNC as "legally invalid," and, to this day, Turkey is the only country to diplomatically recognize the TRNC.  Compl. ¶¶ 15, 31-33; Crist v. Republic of Turkey, 995 F. Supp. at 7.

Cypriots who fled south.  Compl. ¶ 17.[3]  This "abandoned" property was redistributed to Turkish

Cypriots who, in return, were required to renounce their rights to property in southern Cyprus.

TRNC Statement of Facts at 17-18.[4]

      The plaintiffs, Greek Cypriots, filed the instant proposed class action suit on

October 19, 2009, bringing varied claims, alleging that the TRNC unlawfully confiscated their

property in northern Cyprus in 1974, Compl. ¶¶ 10-14, 18-20, and has masterminded a broad

scheme to profit from and sell these properties "in the United States, Europe and around the

world with the aid, assistance and support of HSBC."  Id. ¶ 45.[5]  Plaintiffs allege that the HSBC

defendants "do[] business with the TRNC through the north of Cyprus and the United States and

knowingly aid[], assist[], support[] and benefit[] from the fraudulent property scheme of the

TRNC."  Id. ¶ 46.

---

[3]     The Court notes that the Republic of Cyprus also allegedly "requisitioned" property owned by Turkish Cypriots, which is now held in trust by a property management department of the Cypriot government.  TRNC Statement of Facts at 18.

[4]     In 2005, the TRNC created the Immovable Property Commission ("IPC") to provide Greek Cypriots a domestic remedy for claims relating to their properties in northern Cyprus.  TRNC Mot. Ex. 1 ¶ 39.  The adequacy of the IPC in resolving these property disputes has been upheld by the European Court of Human Rights.  See generally Demopoulos v. Turkey, 2010 Eur. C. H.R. 306 (dismissing a series of related cases for failure to exhaust domestic remedies).  Moreover, "[u]nder Cyprus Law, Greek Cypriot property owners may bring legal actions before the competent Courts of the Republic against trespassers to their properties in the Turkish-occupied area, claiming damages and other legal remedies available to them under civil law.  Judgments issued in favour of lawful property owners shall be recognized and enforced against property/assets of the defendants/judgment debtors in any EU member State, under the provisions of EC Regulation No. 44/2001."  Pls. HSBC Opp. Ex. 1. at 1.

[5]     Specifically, the plaintiffs have brought claims for: (1) interference and denial of property rights including access, use and enjoyment of property; (2) violation of international and customary law; (3) civil conspiracy; (4) aiding and abetting; (5) unjust enrichment; (6) violation of the Lanham Act; (7) intentional interference with property rights; and (8) an accounting.  Compl. ¶¶ 85-134.

The TRNC filed its motion to dismiss for lack of personal jurisdiction on March 26, 2010; plaintiffs requested leave to file a third amended complaint on April 12, 2011. The proposed amended complaint seeks to add 758 individual plaintiffs and several new claims. The HSBC defendants filed their motion to dismiss for failure to state a claim on November 15, 2011. Their primary argument is that the plaintiffs have failed to adequately plead that the HSBC defendants are liable for the alleged acts of a Turkish subsidiary, HSBC A.Ş., which operates three branches in northern Cyprus.

Upon consideration of the parties' arguments, the relevant legal authorities, and the record in this case, the Court concludes that it lacks personal jurisdiction over the TRNC and that the complaint fails to state a claim against the HSBC defendants. For the same reasons, the Court also finds that it would be futile to permit plaintiffs to file an amended complaint. On September 30, 2014, the Court granted both motions to dismiss with prejudice and denied plaintiffs' motion for leave to amend. This Opinion explains the reasoning underlying that September 30, 2014 Order.

## I. TRNC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The plaintiffs assert that this Court has personal jurisdiction over the TRNC pursuant to: (1) D.C. Code § 13–334(a), which authorizes general jurisdiction over foreign corporations "doing business" in the District of Columbia; and (2) D.C. Code § 13-423(a)(1), which authorizes specific jurisdiction over defendants who "transact business" in the District of Columbia. Pls. TRNC Opp. at 10-17. The Court disagrees and finds that it cannot exercise either general or specific personal jurisdiction over TRNC.[6]

---

[6] The Court also notes that it is unlikely the TRNC has the capacity to be sued for state law claims in the District of Columbia, given the plaintiffs' repeated insistence that the

*A.  Legal Standards*

The plaintiffs bear the burden of establishing a *prima facie* showing that the Court

has personal jurisdiction over the TRNC.  See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir.

2005); First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).  In

order to meet this burden, plaintiffs "must provide sufficient factual allegations, apart from mere

conclusory assertions, to support the exercise of personal jurisdiction over the defendant."  Howe

v. Embassy of Italy, 2014 WL 4449697, at *2 (D.D.C. Sept. 11, 2014); see also First Chicago

Int'l v. United Exch. Co., 836 F.2d at 1378 ("Conclusory statements . . . do not constitute the

*prima facie* showing necessary to carry the burden of establishing personal jurisdiction");

Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d 13, 22 (D.D.C. 2014) (plaintiff has the burden of

establishing a factual basis for a court's exercise of personal jurisdiction and for alleging facts

connecting defendant with the forum).

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the

Federal Rules of Civil Procedure, the Court need not accept all of the plaintiffs' allegations as

true.  Jung v. Assoc. of Am. Med. Colls., 300 F. Supp. 2d 119, 127 (D.D.C. 2004).  It "may

receive and weigh affidavits and other relevant matter [outside of the pleadings] to assist in

determining the jurisdictional facts."  Id. (quoting United States v. Philip Morris Inc., 116 F.

Supp. 2d. 116, 120 n.4 (D.D.C. 2000)); see also Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d

---

TRNC is an "unincorporated association."  See Compl. ¶¶ 7, 40; Pls. TRNC Opp. at 3, 5 n.5, 9
("The 'TRNC' is strictly a foreign unincorporated association and nothing more").  Millenium
Square Residential Ass'n v. 2200 M St., LLC, 952 F. Supp. 2d 234, 243 (D.D.C. 2013) (quoting
Plan Comm. v. Pricewaterhousecoopers, LLP, 2007 WL 1191917, at *3-4 (D.D.C. Apr. 20,
2007)) ("[T]he common law of the District of Columbia is that an unincorporated association
may not be sued in its own name"); see also FED. R. CIV. P. 17(b)(3).

at 22.  But all factual discrepancies must be resolved in the plaintiffs' favor.  <u>Crane v. N.Y.</u>

<u>Zoological Soc.</u>, 894 F.2d 454, 456 (D.C. Cir. 1990).

### B.  General Personal Jurisdiction under D.C. Code § 13-334(a)

In support of this Court's exercise of general personal jurisdiction over the TRNC

pursuant to D.C. Code § 13-334(a), the plaintiffs assert that the TRNC:

1. "Hir[es] employees from abroad and send[s] them as representative or staff to the District of Columbia, leas[es] office, hir[es] and pay[s] lawyers, [uses] letterhead, [an] interactive website, phone, email, facsimiles, maps, and a DC postal address, writ[es] letters to newspapers, speak[s] at universities, [and] ha[s] offices [with] other "TRNC" representative[s] who are business owners;"

2. Employs a "known lobbyist and representative of the 'Turkish Cypriot Community' and not the so called "TRNC," who holds "himself out as an ambassador in Washington DC to at least Turkey;"

3. Conducts banking transactions with HSBC "and its network of institution[s] under its name;"

4. Maintains a website (www.trncwashdc.org); and

5. Operates in the District without a business license and has failed to pay D.C. taxes.

Pls. TRNC Opp. at 4-7.

Plaintiffs argue that these assertions are sufficient to establish general personal

jurisdiction because they demonstrate that the TRNC's contacts with the District "have been so

continuous and systematic that it could foresee being haled into court in the District of

Columbia."  Pls. TRNC Opp. at 10 (quoting <u>AGS Int'l Servs. S.A. v. Newmont U.S.A. Ltd.</u>, 346

F. Supp. 2d 64, 74 (D.D.C. 2004)).  Since the plaintiffs' briefing in this case, however, the

Supreme Court has held that "engag[ing] in a substantial, continuous, and systematic course of

business in the forum is not, in and of itself, enough for general jurisdiction to comport with due process." Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014); see also Goodyear Dunlop Tires Operations, SA v. Brown, 131 S. Ct. 2846 (2011). Rather, as the Court made plain in Goodyear, and repeated in Daimler, "general jurisdiction requires affiliations so continuous and systematic as to render [the foreign entity] essentially *at home* in the forum State." Daimler AG v. Bauman, 134 S. Ct. at 758 n.11 (emphasis added) (quoting Goodyear Dunlop Tires Operations, SA v. Brown, 131 S. Ct. at 2851) (internal quotation marks omitted). Otherwise it is not amenable to suit for claims unrelated to particular activity in the forum. Goodyear Dunlop Tires Operations, SA v. Brown, 131 S. Ct. at 2856.[7]

Plaintiffs' allegations, even if true, fall woefully short of demonstrating that the TRNC is "at home" in the District of Columbia. See Pls. TRNC Opp. at 4-7.[8] Although unrecognized by the United States, the TRNC controls and administers over a third of the island of Cyprus and purportedly operates as a "democratic republic," with a President, Prime Minister, legislature, and judiciary. TRNC Statement of Facts at 12-13; Compl. ¶¶ 7, 13, 16. The plaintiffs' allegations, which are premised on the TRNC's ongoing control over their property in Cyprus, indicate that the TRNC is "at home" in northern Cyprus, as its name suggests, not in the District of Columbia. See Daimler AG v. Bauman, 134 S. Ct. at 762 n.20 (an entity "operat[ing]

---

[7]     It follows from what the Supreme Court said in Goodyear and Daimler that the constitutional due process requirement for general jurisdiction goes beyond the minimum contacts test initially announced in International Shoe v. Washington, 326 U.S. 310 (1945). While D.C. Code § 13-334(a) previously was said to be "co-extensive with the reach of constitutional due process," Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 510 (D.C. Cir. 2012), that reach appears to have been constricted by the Supreme Court such that the D.C. Code may be more permissive than due process now permits. This Court, however, need not resolve that question here.

[8]     This Court may not consider the TRNC's contacts through its D.C. office for purposes of personal jurisdiction under the "government contacts" exception. See infra at 9-10.

in many places can scarcely be deemed at home in all of them.  Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States.").

### C.  Specific Personal Jurisdiction under D.C. Code § 13-423(a)(1)

Determining whether D.C. Code § 13-423(a)(1) authorizes specific personal jurisdiction requires a two-part inquiry: (1) whether the defendant has "transacted business" in the District of Columbia; and (2) whether the plaintiffs' claims "arise from" the business transacted.  See, e.g., Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d at 21 (citing D.C. Code §§ 13-423(a)(1) and (b)).  Specific jurisdiction thus "requires a nexus between a foreign corporation's particular contact with the District of Columbia and the claim that the plaintiff asserts."  Id. (citing Novak-Canzeri v. Saud, 864 F. Supp. 203, 206 (D.D.C. 1994)).  "[The] 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due Process Clause."  United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); see also Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 237 (D.D.C. 2005).  "Transacting business" therefore requires that the TRNC "purposefully avail[ed] itself of the privilege of conducting business within the forum state" and that it has established sufficient minimum contacts in the forum state so that it "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985); see Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 43 (D.D.C. 2003).

In support of this Court's exercise of specific personal jurisdiction, the TRNC offers the same factual assertions listed above.  But these allegations also do not establish the prima facie showing required for this Court to exercise specific personal jurisdiction because the

plaintiffs have failed to provide sufficient factual allegations that the TRNC "purposefully avail[ed] itself of the privilege of conducting activities within" the District of Columbia, Burger King Corp. v. Rudzewicz, 471 U.S. at 475, or that its specific claims are based on or arise from those activities.  Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 44 (quoting Novak-Canzeri v. Saud, 864 F. Supp. at 206) ("The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction").

First, the maintenance of an office for the purpose of interacting with the federal government, pursuant to the "government contacts" exception, cannot establish personal jurisdiction.  The so-called "government contacts" exception bars any contacts due to "a nonresident's entry into the District of Columbia for 'the purpose of contacting federal governmental agencies'" from "serv[ing] as a basis for personal jurisdiction." Alkanani v. Aegis Def. Servs., 976 F. Supp. 2d at 25 (quoting Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006)).  In particular, the exception "applies when non-resident corporations 'keep an office in the District for the purpose of maintaining contact with Congress and governmental agencies.'" Alkanani v. Aegis Def. Servs., LLC, 976 F. Supp. 2d at 25 (quoting Sierra Club v. Tenn. Valley Auth., 905 F. Supp. 2d 356, 362 (D.D.C. 2012)).

The plaintiffs argue that the TRNC's office is not used for these purposes, but only offer bald conclusory allegations in support of this argument.  See, e.g., Pls. TRNC Opp. at 12 ("The TRNC presence in Washington DC was not for government interaction or contact as clandestinely argued and presented but to assist in the transfer of funds illegally obtained from property belonging to the plaintiffs to bank accounts with HSBC that occur in whole or in part in Washington, DC").  In contrast, the TRNC has provided detailed affidavits describing the TRNC

D.C. office's activities and documentation from the U.S. Department of State regarding their representative's status.  See TRNC Mot. Ex. 1 ¶¶ 15, 16, 18, 21-25 (affidavit of TRNC Representative Hilmi Akil that the TRNC Office in D.C. exists only to interact with the U.S. government); id. Ex. 3; id. Ex. 4 (letter from the U.S. Dept. of State attesting that Mr. Akil "interacts with Department of State officials on a regular, long-term basis").  The plaintiffs' conclusory allegations are amply outweighed by the TRNC's affidavits and exhibits.  The Court concludes that the TRNC's contacts through its D.C. office are properly excluded from consideration regarding personal jurisdiction.  Consequently, the TRNC's staffing of that office and banking to fund such activities are also excluded from consideration.

The plaintiffs' remaining allegations, regarding the website www.trncwashdc.org and the TRNC's failure to pay taxes or register for a business license, also fail.  Regardless of the website's ownership, which the parties dispute, the mere accessibility of a website in the District is insufficient to establish minimum contacts.  "A website accessible by computers in the District of Columbia, or by District of Columbia residents, is not purposeful availment; rather, it is merely an unavoidable side-effect of modern Internet technology."  Doe v. Israel, 400 F. Supp. 2d 86, 121 (D.D.C. 2005).  The complaint and the plaintiffs' submissions are devoid of any allegation that District residents actually have accessed the website.  See Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 52 ("The question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do' . . . ."); see also Alkanani v. Aegis Def. Servs., 976 F. Supp. at 32.  Lastly, the TRNC's failure to register for a business license or pay D.C. taxes

weighs against finding the TRNC transacts business in the District, absent any factual allegations that the TRNC was required to do either.

In sum, the plaintiffs have failed to allege any specific facts showing that the TRNC transacts business in its District of Columbia office or over the internet, nor have they refuted sworn affidavits and evidence to the contrary. Accordingly, the plaintiffs have not made a *prima facie* showing under Section 13-423(a)(1).

### D.  *Jurisdiction under Federal Rule of Civil Procedure 4(k)(2)*

In the alternative, the plaintiffs assert that the Court may exercise personal jurisdiction over the TRNC pursuant to the federal long-arm statute, Rule 4(k)(2) of the Federal Rules of Civil Procedure. Pls. TRNC Opp. at 17. This Rule allows a district court to exercise general or specific personal jurisdiction over a defendant who lacks sufficient contacts with any single forum, but has such contacts with the United States as a whole. See FED. R. CIV. P. 4(k)(2). Under this Rule, a court may exercise jurisdiction over a defendant "(1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." Mwani v. Bin Laden, 417 F.3d at 10.

In support of personal jurisdiction under Rule 4(k)(2), the plaintiffs rely upon the conclusory allegations rejected above and offer only the following additional assertions of fact: the TRNC (1) maintains a "West coast" and "NY" representative, (2) participated in a Small Business Conference in the "Southern United States," and (3) attempted to intervene in litigation

in Indiana in 1989.  Pls. TRNC Opp. 4-7.[9]  These allegations fail to support personal jurisdiction

under Rule 4(k)(2).  First, the plaintiffs' claims do not arise from these contacts, such that this

Court could exercise specific personal jurisdiction.  Second, they fall far short of demonstrating

that the TRNC is "at home" in the United States, as required for general personal jurisdiction.

The TRNC's contacts with the United States as a whole – just like its contacts with the District

of Columbia – are insufficient to satisfy due process.  See Mwani v. Bin Laden, 417 F.3d at

11-12.  Consequently, this Court cannot exercise personal jurisdiction under Rule 4(k)(2) of the

Federal Rules of Civil Procedure.[10]

### E.  Jurisdictional Discovery

The plaintiffs request jurisdictional discovery to "show the full extent of

[the TRNC's] contacts and representation made on the website, along with banking and

information relevant and indicative of its nature of business in the District of Columbia,

including meetings, visitors, loans, payments, articles, speaking engagements and business."

Pls. TRNC Opp. at 12-13; see also id. at 15, 17 n.11.  Such jurisdictional discovery "lies within

the district court's discretion," Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C.

Cir. 1994), and is appropriate "if it could produce facts that would affect [the court's]

---

[9]     With respect to the Small Business Administration conference, the plaintiffs also
state that "[t]he trncwashdc.org website appears with the director of the SBA Mr. Doug Gurley,
who suggests the members, that indicates the trncwashdc.org website/office, provided loans or
funds in the amount of $75,000.00 to assist businesses affected by hurricane Katrina [sic]."  To
the extent the plaintiffs allege that the TRNC contributed to these loans, the plaintiffs own
exhibit clearly states that the loans were provided by the Association of Small Business
Development Centers.  Pls. TRNC Opp. Ex. 11 at 1.  The record does not indicate, nor have
plaintiffs alleged, that the TRNC is a member of this association.

[10]     Because the Court finds it lacks personal jurisdiction over the TRNC, it does not
reach the TRNC's arguments regarding venue.

jurisdictional analysis." Al Maqaleh v. Hagel, 738 F.3d 312, 325-26 (D.C. Cir. 2013).

Jurisdictional discovery is not appropriate, however, "in the absence of some specific indication

regarding what facts additional discovery could produce." Id. The plaintiffs therefore must

"demonstrate with plausible factual support amounting to more than speculation or conclusory

statements that discovery will uncover sufficient evidence" to establish personal jurisdiction.

Simon v. Republic of Hungary, 2014 WL 1873411, at *41 (D.D.C. May 9, 2014); see, e.g.,

El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 671 (D.C. Cir. 1996), abrogated on other grounds

by Samantar v. Yousef, 560 U.S. 305 (2010) (plaintiff was entitled to jurisdictional discovery

based upon evidence of specific transactions by defendant bank in the forum).

   The plaintiffs in this case have failed to make this showing, relying only on

conclusory statements that the TRNC advertises and sells property through its D.C. office and

website. See, e.g., Compl. ¶ 49. They have not provided any allegations or evidence regarding

specific transactions, and have provided no evidence to discredit the TRNC's contrary affidavits.

Consequently, jurisdictional discovery is unwarranted, and the plaintiffs' request will be denied.


II. HSBC DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

   The HSBC defendants move to dismiss all claims against them for failure to state

a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that: (1) the

plaintiffs have failed to allege facts to support imposing liability on the HSBC defendants for the

acts of a Turkish subsidiary; and (2) the complaint fails to place the HSBC defendants on notice

of the claims against them, in violation of Rule 8 of the Federal Rules of Civil Procedure. The

Court agrees and will dismiss the claims against the HSBC defendants.

## A.  *Legal Standards*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if the plaintiffs fail "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the facts alleged must be "enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678).

In considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)).  The complaint is construed liberally in the plaintiff's favor, and the Court gives the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  Hettinga v. United States,

677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted).  Nevertheless, the Court need

not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged

in the complaint, nor must the Court accept the plaintiff's legal conclusions.  Id. (citing Kowal v.

MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

### B.  Plaintiffs Failed to Adequately Plead Alter-Ego Liability

"It is a general principle of corporate law deeply ingrained in our economic and

legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  United

States v. Bestfoods, 524 U.S. 51, 61 (1998) (quoting William O. Douglas & Carrol M. Shanks,

Insulation from Liability Through Subsidiary Corporations, 39 YALE L.J. 193 (1929)) (internal

quotation marks omitted); see also Anderson v. Abbott, 321 U.S. 349, 362 (1944) ("Limited

liability is the rule, not the exception").  Only "when the incentive value of limited liability is

outweighed by the competing value of basic fairness to parties," may a court "pierce the

corporate veil" and hold a parent corporation liable for its subsidiary's actions.  Labadie Coal

Co. v. Black, 672 F.2d 92, 96 (D.C. Cir. 1982).  Veil-piercing is an extraordinary procedure that

courts should not use lightly, and only extreme circumstances call for disregard of corporate

form.  Schattner v. Girard, 668 F.2d 1366, 1370 (D.C. Cir. 1981).

In the District of Columbia, the corporate entity usually will be respected, but a

party "may be permitted to pierce the corporate veil upon proof[] that there is (1) unity of

ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong, or other

considerations of justice and equity justify it."  Lopes v. JetSetDC, LLC, 994 F. Supp. 2d 135,

146 (D.D.C. 2014) (quoting McWilliams Ballard, Inc. v. Broadway Mgmt. Co., Inc., 636 F.

Supp. 2d 1, 8 (D.D.C. 2009)).[11]   The D.C. Circuit therefore has found piercing the veil to be

justified when "the corporation, rather than being a distinct, responsible entity, is in fact the alter

ego or business conduit of the person [or corporation] in control."  Labadie Coal Co. v. Black,

672 F.2d at 97; see also United States ex rel. Hockett v. Columbia/HCA Healthcare Gr., 498 F.

Supp. 2d 25, 60 (D.D.C. 2007) (quoting AGS Int'l Servs. v. Newmont USA Ltd., 346 F. Supp.

2d 64, 89 (D.D.C. 2004) ("A court can pierce the veil between the parent and subsidiary only

where the parent 'so dominated the subsidiary corporation as to negate its separate

personality.'").  Under this test, "courts generally inquire as to 'whether corporate formalities

have been observed; whether there has been commingling of corporate and shareholder funds,

staff and property; whether a single shareholder dominates the corporation; whether the

corporation is adequately capitalized; and, especially, whether the corporate form has been used

to effectuate a fraud.'"  Lopes v. JetSetDC, LLC, 994 F. Supp. 2d at 147 (quoting Ruffin v. New

Destination, LLC, 773 F. Supp. 2d 34, 41 (D.D.C. 2011)).

      The plaintiffs' factual allegations are almost exclusively focused on an alleged

scheme between the TRNC and HSBC A.Ş., a Turkish bank operating in northern Cyprus, to

control and profit from the plaintiffs' property in northern Cyprus.  See, e.g., Compl. ¶ 9

("HSBC operates at least three branches in the TRNC that are transacting business and

knowingly support, aid and assist the TRNC to deprive or interfere with the rights to property

---

[11]    The parties both assume that District of Columbia law governs, and this Court
will "proceed on the same assumption."  Maljack Prods., Inc. v. Motion Picture Ass'n of Am.,
Inc., 52 F.3d 373, 375 (D.C. Cir. 1995); see also Riley v. BMO Harris Bank, N.A., 2014 WL
3725341, at *4 n.4 (D.D.C. July 29, 2014) ("[T]he parties agree about the law to be applied in
evaluating this motion and the Court shall respect that agreement"); Doe v. De Amigos, LLC,
987 F. Supp. 2d 12, 15-16 (D.D.C. 2013) (explaining that "courts need not address choice of law
questions sua sponte" and "apply[ing] District of Columbia substantive law since both parties
agree that District of Columbia substantive law governs").

belonging to the Plaintiffs and the Class via London and Washington, DC"); id. ¶ 52 ("The TRNC is also aided and supported by businesses and banking institutions like HSBC and REMAX realtors in financing, marketing and selling properties in the north of Cyprus belonging to Plaintiffs and the Class").  The plaintiffs thus seek to hold the HSBC defendants liable for the alleged actions of HSBC A.Ş. – not a defendant in this case – by piercing the corporate veil.  See Compl. ¶ 8 ("The HSBC banks in the TRNC controlled region are managed and directed by the parent engaged in the illegal conduct"); Pls. HSBC Opp. at 16 ("There is no doubt that HSBC will be continuing its illegal operations with impunity if allowed[;] therefore piercing the veil of HSBC is allowable under the circumstances in this matter").  The plaintiffs, however, have failed to adequately plead facts supporting their argument that piercing the corporate veil is warranted in this case.

        To justify piercing the corporate veil, the plaintiffs allege that: (1) HSBC Holdings exercises control over its subsidiaries and manages their affairs and daily operations relating to the "fraudulent property scheme"; (2) the HSBC banks in the TRNC are managed and directed by HSBC Holdings; and (3) "[t]he exclusive control and direction of the acts complained of . . . occur from a common management and board of directors regardless of location and specifically involve London, Washington DC and the TRNC controlled north of Cyprus."  Compl. ¶¶ 8-9.  In support of these allegations, however, the plaintiffs again offer only conclusory statements in place of factual allegations.  See, e.g., id. ¶ 8 ("There is no separation between the subsidiaries and the parent.  HSBC with common management and direction associated in the illegal enterprise[,] exercises control over the subsidiaries and manages the affairs and day to day operations as it relates to the fraudulent property scheme involved in the

north of Cyprus through the TRNC . . .").  These bare recitations of the requirements for alter-ego liability fail to plausibly allege that the HSBC defendants do not maintain separate identities or that the failure to hold the HSBC defendants liable would "sanction a fraud, promote justice, or lead to an evasion of legal obligations."  Bufco Corp. v. NLRB., 147 F.3d 964, 969 (D.C. Cir. 1998); see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (A plaintiff's obligation to state a claim "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .").

### C.  Plaintiffs Failed to Adequately Plead Alternative Forms of Liability

Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct."  Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001); accord Melegrito v. CitiMortgage Inc., 2011 WL 2197534, at *6 (N.D. Cal. June 6, 2011) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice of the claims against them and the grounds for relief"); Bates v. Nw. Human Servs., Inc., 466 F. Supp. 2d 69, 85 (D.D.C. 2006) (dismissing plaintiffs' RICO claim for, inter alia, "generally neglect[ing] to distinguish between the defendants when describing the factual underpinnings of the complaint").  Instead, a plaintiff must provide each defendant with "fair notice of each claim and its basis."  Caldwell v. Argosy Univ., 797 F. Supp. 2d 25, 27 (D.D.C. 2011) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1118 (D.C. Cir. 2000)).

The plaintiffs allege "independent liability for each HSBC entity" on the basis of "its involvement in illegal transactions to and from the occupied territory and 'TRNC' and from

there to and from London and Washington DC."  Pls. HSBC Opp. at 1 n.3; <u>see</u> <u>also</u> <u>id.</u> at 12

("HSBC ignores that it is liable for its own failures to supervise and prohibit such illegal

transactions").  But the plaintiffs fail to distinguish between each entity, simply referring to all

HSBC defendants collectively throughout the complaint and their briefing.  <u>See</u> Compl. ¶ 8

("hereinafter all HSBC institutions mentioned are collectively referred to as 'HSBC'");

Pls. HSBC Opp. at 1 n.3 ("For the purposes of this Opposition, HSBC USA (subsidiary), and

HSBC Holdings, PLC (parent) will be considered one and the same").  The claims against the

HSBC defendants do not even distinguish between the TRNC and the HSBC defendants.  <u>See,</u>

<u>e.g.</u>, Compl. ¶ 86 ("The Defendants, jointly and individually, did willfully and without right

forcibly intrude on the property, personal and realty, of the Plaintiffs and the Class").  It

therefore is impossible for the Court or the defendants to determine what factual allegations

pertain to HSBC A.Ş., the Turkish subsidiary, HSBC U.S.A., HSBC Group, or HSBC Holdings.

Consequently, plaintiffs' claims under alternative theories of liability, if any, fail to provide fair

notice to the HSBC defendants and will be dismissed for failure to comply with Rule 8 of the

Federal Rules of Civil Procedure.[12]

### III.  PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Under Rule 15 of the Federal Rules of Civil Procedure, the Court "will freely give

leave [to amend a complaint] when justice so requires," FED. R. CIV. P. 15(a)(2), and "[i]t is

common ground that Rule 15 embodies a generally favorable policy toward amendments."

---

[12]     The HSBC defendants also argue that HSBC Group is a fictional entity and thus lacks the capacity to be sued.  The plaintiffs appear to have conceded this point because HSBC Group is removed as a defendant in the proposed third amended complaint.  Mot. to Amend Ex. 1.  The Court does not reach this argument, however, because the complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure.

Howard v. Gutierrez, 237 F.R.D. 310, 312 (D.D.C. 2006) (quoting Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1136-37 (D.C. Cir. 1989)).  Leave may be denied, however, due to "undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Where the proposed amendment would not survive a motion to dismiss or motion for judgment on the pleadings, leave may be denied on the grounds of futility.  See Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996); Elliott v. Fed. Bureau of Prisons, 521 F. Supp. 2d 41, 49 (D.D.C. 2007); Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1, 6 (D.D.C. 2000).

The proposed third amended complaint would (1) join 758 individual plaintiffs "seek[ing] redress of claims based on the same conduct, transactions and occurrences . . . in Plaintiffs' prior pleadings," Pls. Mot. to Amend at 1, and (2) add claims for common law fraud and trespass to chattel.  Id. Ex. 1 ¶¶ 138, 143.  The amendments, however, cure none of the jurisdictional defects regarding the TRNC, compare Compl. ¶ 2 with Pls. Mot. to Amend Ex. 1 ¶ 2,  do not plead additional facts to state a claim against the HSBC defendants, and still do not distinguish among the individual HSBC defendants.  See Pls. Mot. to Amend. Ex. 1 ¶ 12. The proposed amendments therefore "would not alter this Court's analysis in any way, and thus would be futile."  Sierra Club v. U.S. Army Corps. of Eng'rs, 2014 WL 4066256, at *5 n.5 (D.D.C. Aug. 18, 2014).  Accordingly, the plaintiffs' motion for leave to file an amended complaint is denied.

IV.  CONCLUSION

For the foregoing reasons, the Court issued an Order on September 30, 2014,

granting both the TRNC's and the HSBC defendants' motions to dismiss.  The Court also denied

the plaintiffs' motion for leave to amend.  As there are no remaining defendants, the Court

dismissed this action with prejudice.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Court

DATE:  October 9, 2014